(163 P.3d 378)
No. 93,259

STATE OF KANSAS, *Appellee,* v. GREGORY L. McCALL, *Appellant.*

Opinion filed August 3, 2007.

*Heather Cessna, Janine Cox,* and *Shawn Minihan,* of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MALONE, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT, J.: Gregory McCall appeals his convictions and sentences for two counts of identity theft. We affirm.

Detective Kevin Duncan was working on counterfeit identification cases involving store credit accounts and received a call after two men had been taken into custody at J.C. Penney's. Detective Duncan testified that as soon as he saw the counterfeit identifications, he knew these men were involved in previous cases he was investigating. Based on the information provided by one of the arrested men, Detective Duncan obtained a search warrant for a Missouri house where McCall was residing.

After the service of the search warrant, McCall was arrested by the Kansas City, Missouri, police. McCall was *Mirandized* by a Missouri officer in Detective Duncan's presence. Detective Duncan testified that McCall waived his *Miranda* rights and answered Detective Duncan's questions. According to Detective Duncan, McCall admitted his involvement in an identity theft ring and provided the names of the two men who had previously been arrested with stolen identities.

McCall was charged with two counts of identity theft. McCall waived his right to a jury trial. Initially, McCall hired Carl Cornwell to represent him. However, Cornwell was allowed to withdraw in August 2003. On December 5, 2003, the trial court held a hearing on the motion to withdraw of Bob Thomas, who was representing McCall at the time. Thomas alleged that McCall threatened his safety. McCall disputed Thomas' assertion and stated that he

wanted to exercise his constitutional right to represent himself. Thomas was allowed to withdraw.

At the hearing, the trial court informed McCall of the serious nature of the charges he faced and of the benefits of legal counsel. The trial court also explained to McCall his possible prison terms, the disadvantages of self-representation because McCall was not "law-trained," and that it would not assist McCall during the trial. McCall said he understood, but insisted he had a constitutional right to self-representation.

The trial court noted for the record that it believed McCall's decision was knowing and voluntary. Even though McCall admitted taking psychotropic medication due to a brain injury, he was given permission to proceed pro se, with the understanding that standby counsel would be provided upon McCall's request. McCall stated that he was opposed to having standby counsel.

On December 18, 2003, the State filed a motion to determine McCall's competency because of McCall's brain injury, medication usage, and the fact that he sought to call the governors and attorneys general of both Kansas and Missouri as witnesses. McCall filed a lengthy pro se motion opposing the request for a competency hearing.

The trial court held a hearing on the State's motion, at which McCall was allowed to represent himself. In addition to the facts alleged in the motion, the State claimed that McCall was now alleging personnel at the jail were trying to kill him. Previous to this, McCall was found to be competent after a federal court evaluation.

McCall objected to the evaluation because he considered himself to be "highly intelligent" and he did not believe there was any reason that he could not understand criminal procedure. McCall denied that his head injury had any bearing on his competency, other than making him slightly paranoid. McCall explained that he wanted the governors subpoenaed because they could be "expert witnesses to the constitutional violations" in his case.

The trial court granted the State's motion and ordered a mental health evaluation. The evaluator determined that McCall has average intelligence, excellent short and long term memory, good attention and concentration, and "fully understands the nature and

purpose of the proceedings against him." The evaluator believed that McCall was competent to stand trial, and that his ability to defend himself pro se "hinges on his knowledge of case law and court proceedings."

A hearing was held after the completion of the mental health evaluation; however, there is no transcript of the hearing in the record on appeal. We assume the trial court relied on the mental health evaluation report when making its decision to allow McCall to represent himself at trial. The trial court found McCall guilty as charged and he received a controlling sentence of 44 months' imprisonment. McCall appeals his conviction and sentence.

On appeal, McCall contends that the trial court denied his Sixth Amendment right to counsel by failing to appoint counsel for him for the competency hearing, and that the competency determination was tainted due to his pro se status at the hearing. He argues that a hearing at which competency is questioned is a critical stage which implicates the right to counsel. Citing case law from another jurisdiction, McCall claims it was error to allow him to represent himself at a competency hearing.

The Kansas Supreme Court has held that an indigent defendant is entitled to counsel at every stage of the pretrial proceedings and trial. *State v. Pierce*, 246 Kan. 183, 188, 787 P.2d 1189 (1990). Generally, resolution of this matter involves statutory and constitutional issues and affords this court plenary review of the trial court's decisions. See *State v. Clopton*, 30 Kan. App. 2d 1208, 1211, 57 P.3d 21 (2002).

There is no reported Kansas case addressing the issue of pro se representation at a competency hearing. The Court of Appeals of Utah examined the general issue in *State v. Drobel*, 815 P.2d 724 (Utah App. 1991), where a defendant stated that he wanted to proceed pro se despite numerous prior findings of incompetence. When representing himself, the defendant informed the trial court that he wanted to drop a prior diminished capacity defense.

The *Drobel* court noted that "competence to stand trial, by itself, 'does not automatically enable an accused to waive the constitutional right to assistance of counsel and to conduct his or her own defense.'" 815 P.2d at 734. However, the court clarified that no

separate finding of mental competence, "apart from competence to stand trial, is necessary before a defendant may exercise the right of self-representation." 815 P.2d at 734.

In *Wise v. Bowersox*, 136 F.3d 1197 (8th Cir. 1998), the defendant represented himself at a competency hearing, which was held so that the trial court could determine the defendant's fitness to proceed pro se. The facts of that case are similar to the one at bar; the defendant in *Wise* objected to the competency evaluation, claiming he was competent and that he was ready for the trial to begin. However, the facts differ because in *Wise*, the prosecutor attempted to show that the defendant was competent. Without elaboration, the Eighth Circuit ruled that the hearing at which the defendant acted pro se was a "fair inquiry" at which the defendant's due process rights were protected. 136 F.3d at 1203.

In contrast, in *United States v. Purnett*, 910 F.2d 51 (2d Cir. 1990), the Second Circuit ruled that a court is "not obliged to accept every defendant's invocation of the right to self-representation." 910 F.2d at 55. Therefore, the court held that "where a trial court has sufficient cause to doubt the competency of a defendant to make a knowing and intelligent waiver of the right to counsel, it must appoint counsel—whether defendant has attempted to waive it or not—and counsel must serve until the resolution of the competency issue." 910 F.2d at 56.

The ultimate question is whether McCall's constitutional rights were protected at all stages of the proceedings. We are not prepared to enter a bright-line rule regarding pro se representation at a competency proceeding. However, because of the trial court's findings relating to McCall's waiver of counsel and the mental health evaluation report, McCall's Sixth Amendment rights were protected. We disagree with his arguments to the contrary.

Prior to trial, McCall filed a pro se motion to suppress his confession. In the motion, McCall claimed that his confession should be suppressed because Detective Duncan had no authority to question him in Missouri, especially outside the presence of a recording device. At a hearing on McCall's motion, he "emphatically" denied any confession. The State countered by noting that McCall

was *Mirandized* by a Missouri officer prior to being questioned by Detective Duncan. McCall's motion to suppress was denied.

At the bench trial, Detective Duncan testified that McCall confessed to the crimes with which he was charged. Detective Duncan claimed that this confession came after McCall waived his *Miranda* rights. At trial, McCall objected to some of this testimony, claiming there was no evidence of a *Miranda* waiver.

On appeal, McCall notes that despite his pro se status, he consistently challenged the admissibility of his confession. He now claims once that challenge was entered, the trial court was obligated to conduct further proceedings regarding the voluntariness of that confession. Since that was not done, McCall claims there were insufficient facts to support the trial court's decision to admit his confession into evidence.

A dual standard is used when reviewing the suppression of a confession. In reviewing a trial court's ruling on a motion to suppress a confession, the appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard and reviews the ultimate legal conclusion drawn from those facts de novo. The appellate court does not reweigh evidence, assess the credibility of witnesses, or resolve conflicting evidence. *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

McCall faults the trial court for not holding a *Jackson v. Denno* hearing. The purpose of a *Jackson v. Denno* hearing is to allow the trial court to determine the voluntariness of a statement or confession. Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. *State v. Walker*, 252 Kan. 279, 282, 845 P.2d 1 (1993).

McCall never claimed that his statement was involuntary, or that he was improperly coerced. Instead, all of McCall's complaints centered on his theory that Detective Duncan had no authority to act in Missouri. McCall also believed that the search warrant ob-

tained and executed by Missouri authorities was invalid, meaning that all of the proceedings were tainted. This is not an issue where McCall meant to raise a *Jackson v. Denno*-type issue but did not know the term of art; this is a situation where McCall did not challenge the voluntariness of his confession.

Similarly, at the hearing on his motion, McCall did not challenge voluntariness, but instead claimed that there were no witnesses. All of the issues on which McCall focused at the hearing involved the search warrant issued and executed by Missouri authorities in Missouri. This was a legal decision which was not dependent on any facts and would not have been clarified by a hearing.

The trial court did not have jurisdiction over what happened in Missouri. At trial, McCall had the opportunity to cross-examine Detective Duncan regarding certain facts surrounding both the giving of the *Miranda* warning and McCall's own statements. We disagree with McCall's contention on appeal that the trial court was obligated to inquire further into the voluntariness of his confession. The trial court properly addressed the issues before it.

McCall contends that cumulative errors substantially prejudiced him such that he did not receive a fair trial as guaranteed by the United States Constitution.

Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant. *Ackward*, 281 Kan. at 29.

We would not characterize the evidence against McCall as "overwhelming"; however, we do not believe that the issue of cumulative error comes into play. We are confident that McCall's trial met all guarantees established by both the United States and Kansas Constitutions.

At sentencing, the trial court ordered restitution in the amount of $128.31 as a "condition of postrelease supervision." There were no further findings made regarding restitution.

McCall notes that Kansas law allows a trial court to order restitution unless the court finds circumstances which would render the restitution plan unworkable. McCall believes this requires the trial court to determine whether, in fact, a plan is workable. McCall asserts that this court should use the standard applied by the federal courts, which requires the trial court to determine a defendant's ability to pay.

Resolution of this issue requires us to interpret the meaning of K.S.A. 2006 Supp. 21-4603d(b)(1). The interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the trial court's interpretation. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

K.S.A. 2006 Supp. 21-4603d(b)(1) reads, in relevant part:

"In addition to or in lieu of any of the above, the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable . . . . If the court finds a plan of restitution unworkable, the court shall state on the record in detail the reasons therefor."

McCall is not challenging the amount of restitution ordered by the trial court or claiming that the amount is not supported by the evidence presented at trial. McCall's sole contention is that the trial court erred by not considering his ability to pay.

However, the Kansas Supreme Court has already determined that the clear language of K.S.A. 2006 Supp. 21-4603d(b)(1) makes restitution the rule, and a finding that restitution is unworkable is the exception. Thus, our Supreme Court concluded that it is the defendant's burden to come forward with evidence of his or her inability to pay. *State v. Goeller*, 276 Kan. 578, 583, 77 P.3d 1272 (2003). Further, in *State v. Cole*, 37 Kan. App. 2d 633, 155 P.3d 739 (2007), this court refused to apply the federal standard to the Kansas statute, finding that the clear language of the statute made such an analysis unnecessary.

The trial court did not err by failing to consider McCall's ability to pay when ordering restitution. The plain language of K.S.A. 2006 Supp. 21-4603d(b)(1) does not require such a finding.

McCall argues that the trial court violated his constitutional rights by using his criminal history score to enhance his base sentence, when his prior convictions were not proven to a jury beyond a reasonable doubt. McCall acknowledges this issue has been adversely decided.

A prior conviction is a sentencing factor and not an element of the crime. Thus, the prior conviction need not be presented in the indictment and proved to a jury in order to be used by the court to increase the sentence. *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002).

This court is duty bound to follow Kansas Supreme Court precedent, absent an indication the court is departing from its position. See *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). Seeing no departure, McCall's request for relief must be denied.

Affirmed.