IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,810

STATE OF KANSAS,
*Appellee*,

v.

AMBER E. BURDEN,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court exercises de novo review over the legal question of whether a judge may refuse to allow a criminal defendant to exercise his or her constitutional right of self-representation because of mental incompetence. But an appellate court will review a district court's factual findings about mental competency for an abuse of discretion.

2.

Under *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008), the United States Constitution does not prohibit states from insisting on representation for defendants who are competent to stand trial but due to severe mental illness are not competent to represent themselves. But there is no error when a court does not appoint counsel for a defendant who wishes to exercise the right of self-representation if there is no evidence of the defendant's severe mental illness.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 17, 2017. Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed July 17, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kerwin L. Spencer*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.: Amber Burden contends the district court judge erred by allowing her to represent herself because mental illness prevented her from meeting the mental competency standard of *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). We hold the district court did not err in allowing Burden to exercise her constitutional right of self-representation when the record does not establish that Burden suffers from a severe mental illness. We thus affirm her convictions.

FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Burden's arrest for possession of marijuana, cocaine, and drug paraphernalia. The charges arose after Burden's ex-husband visited their daughter at school and the daughter showed him a glass marijuana pipe that she found in Burden's bedroom. The ex-husband told the school principal, who called police.

A law enforcement officer investigating the principal's report went to Burden's home and knocked on her door. She answered, and the officer entered and searched without a warrant or clearly granted consent. The first officer and others who responded found drug paraphernalia and small amounts of marijuana and cocaine. The officers arrested Burden, and the State later charged her with possession of marijuana, cocaine, and drug paraphernalia.

At Burden's first appearance in court, she was disruptive. She interrupted the district court judge, was nonresponsive to questions, and declared she would not recognize the court's authority or jurisdiction. Burden asked to see the judge's oath of office and questioned if he was a member of the bar. Burden also expressed her intent to represent herself. After she refused to leave the courtroom, the judge found her in contempt of court and ordered a mental competency evaluation.

Burden underwent the evaluation at the Sumner Mental Health Center. Burden self-reported an anxiety disorder and expressed her opinion that she had posttraumatic stress disorder related to a history of trauma, although there was no other evidence presented of any such diagnosis. The evaluator conducted a standardized competency test and found that Burden had the ability to consult with counsel and possessed a factual and rational understanding of courtroom proceedings. The evaluator also found that Burden had the ability to assist counsel in her defense but noted that Burden reported she wanted to represent herself. The competency evaluation concluded that Burden was competent to stand trial and, as particularly relevant to the issue in this appeal, had "no significant impairment that is psychiatric in nature."

At a later hearing, the judge considered Burden's mental competency to stand trial and her waiver of appointed counsel. The judge found, based on the competency evaluation, that Burden was competent to stand trial.

The judge then addressed Burden's request to waive her right to an attorney. The judge conducted a long colloquy with Burden about her constitutional right to an attorney, her right to have an attorney appointed, and the significant risks she took if she represented herself. He asked her several questions about trial procedures, her understanding of the charges against her, the State's burden of proof, and the potential penalties. The judge encouraged Burden to get an attorney. He also asked questions about

the voluntariness of her waiver of counsel and ultimately determined her waiver was "expressed, explicit[], voluntary, willing, knowing, and intelligent." Burden also executed a written waiver of her right to an attorney. The judge allowed her to represent herself, although he appointed standby counsel.

Burden never moved to suppress the drugs and paraphernalia found in her home even though the judge granted three continuances to give her time to file a motion and repeatedly urged her to do so. Burden did file two motions challenging the court's jurisdiction and asking the judge to dismiss the case. The judge rejected these motions.

At trial, Burden's cross-examination of witnesses often strayed from the evidence and scope of direct examination. At one point she tried to play a video of a speech by President Barack Obama and, when not allowed to do so, began to read it. She belatedly tried to challenge the search of her home, and she repeatedly made statements about her belief in the medical benefits of marijuana and cocaine. The judge frequently cautioned her to not make speeches when asking questions. While cross-examining her ex-husband, Burden went into irrelevant details of their 17-year relationship and subsequent divorce and custody arrangements. And she asked both him and her daughter several questions apparently aimed at revealing her views about the medical use of marijuana. She admitted to possession of cocaine and marijuana but built a defense based on her belief both substances were natural products that should be legal.

The jury returned a guilty verdict of possession of marijuana and cocaine but not guilty for possession of paraphernalia.

On appeal to the Court of Appeals, Burden argued the district court judge used the incorrect standard to determine whether she was competent to represent herself. The

Court of Appeals affirmed. *State v. Burden*, No. 116,810, 2017 WL 5507728 (Kan. App. 2017) (unpublished opinion).

Burden timely petitioned for review. We granted review and have jurisdiction under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision).

ANALYSIS

Burden's argument rests on the premise that the judge had to apply a higher standard to determine she was mentally competent to represent herself than the standard for evaluating competency to stand trial. Because the district court judge did not explicitly apply any standard other than the one for determining competence to stand trial and the Court of Appeals did not require a more exacting standard, Burden argues both courts erred.

To explain her argument, we examine three distinct but related concepts—mental competency to stand trial, the capacity to waive the right to counsel, and mental competency to self-represent.

1. *Mental Competency to Stand Trial*

Either a defendant, the State, or a judge can raise the question of whether a defendant lacks competency to stand trial. Once mental competency is at issue, courts apply the standard set out by the United States Supreme Court's decision in *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Under the *Dusky* standard, a defendant's competence to stand trial is determined by "'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" 362 U.S. at 402.

5

K.S.A. 22-3301 also defines the phrase "incompetent to stand trial." Under it, a defendant charged with a crime is incompetent to stand trial if he or she "because of mental illness or defect is unable:  (a) To understand the nature and purpose of the proceedings against him [or her]; or (b) to make or assist in making his [or her] defense." K.S.A. 22-3301(1). This statutory definition "is in accord" with the *Dusky* standard. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015); see *State v. Woods*, 301 Kan. 852, 857-58, 348 P.3d 583 (2015).

The evaluator specifically noted she used the *Dusky* standard in evaluating Burden, and the district court judge relied on that evaluation in finding Burden competent to stand trial.

Burden does not take issue on appeal with that determination. Instead, she argues the district court judge erred by not making a separate determination that Burden was competent to represent herself. That argument rests on Burden's right to waive counsel, which we explain before discussing how mental competency impacts the exercise of that right.

2. *Waiver of the Right to Counsel*

Neither the United States nor Kansas Constitutions explicitly provide for a right of self-representation. Instead, the United States Supreme Court implied the right to waive counsel and act as one's own attorney from the right to counsel granted in the Sixth Amendment to the United States Constitution. *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); see *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

Because the right to represent oneself is "at odds with the right to be represented by counsel, the courts must indulge every reasonable presumption against waiver of the right to counsel[] and will not presume acquiescence in the loss of fundamental rights, i.e., the right to counsel." *State v. Vann*, 280 Kan. 782, 782, Syl. ¶ 4, 127 P.3d 307 (2006). The United States Supreme Court thus requires a criminal defendant to make a "knowing[] and intelligent[]" waiver of the right to counsel. *Faretta*, 422 U.S. at 835.

This court has suggested a three-step framework for a district court judge to use in determining if a waiver is knowing and intelligent. First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case. *State v. Buckland*, 245 Kan. 132, 138, 777 P.2d 745 (1989).

To assure the defendant appreciates the consequences of waiving representation by counsel, *Buckland* suggests the court explain that the defendant will be held to the same standards as an attorney; that the judge will not assist in or provide advice about presenting a defense; and that it is advisable to have an attorney because many trial techniques, evidence rules, and the presentation of defenses require specialized training and knowledge. 245 Kan. at 138; see *Bunyard*, 307 Kan. at 475-76 (citing a seven-step checklist found in Cateforis, Kansas Criminal Law 11-9 [5th ed. 2016]).

This court has not required use of a checklist, however. Instead, courts weigh whether a defendant has knowingly and intelligently waived the right to counsel by examining the circumstances of each case. *State v. Armstrong*, 240 Kan. 446, 453, 731 P.2d 249 (1987).

Burden does not argue that the judge failed to fully advise her of her right to counsel or of the consequences of waiving that right—the first or third steps identified in *Buckland*. Indeed, the record reveals the judge took great pains to list the rights and advantages Burden would be giving up by waiving her right to counsel. The judge repeatedly encouraged Burden to consider accepting appointed counsel and took the added step of having Burden review and execute a written waiver of her right to counsel. In an abundance of caution, the judge appointed an attorney to serve as stand-by counsel, which a court may do even over the objection of the defendant, so Burden would have access to assistance if questions or a need for advice arose. See *Vann*, 280 Kan. at 793 (citing *Faretta*, 422 U.S. at 834 n.46).

Nor does Burden focus on the second prong of *Buckland*—the capacity to waive her constitutional right to counsel. The United States Supreme Court in *Godinez v. Moran*, 509 U.S. 389, 399-400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993), discussed this capacity requirement. In *Godinez*, the United States Supreme Court specifically rejected "the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from)" the standard for determining competence to stand trial. 509 U.S. at 398. *Godinez* did, however, recognize a "'heightened' standard" in the sense it held a trial court must find both that a defendant is competent to stand trial and that the defendant's waiver of counsel was knowing and voluntary. But it clarified it was not imposing "a heightened standard of *competence*." 509 U.S. at 400-01.

The determination of competency to waive the constitutional right to counsel (the second *Buckland* prong) is closely related to the requirement that one must be mentally competent to represent oneself. But the United States Supreme Court distinguished the concepts in *Edwards*, 554 U.S. 164. Citing *Edwards*, Burden asserts (1) the district court judge had to order a second evaluation to determine her mental competency to represent

herself; (2) the standard the judge should have applied requires a more rigorous showing than that required under the *Dusky* standard; and (3) she lacked the required mental competency.

### 3. *Mental Competency to Self-Represent*

Before we examine the issue of whether a court must examine a defendant's mental competency to act as his or her own attorney, we pause to draw a contrast to a defendant's technical competency to act as his or her own attorney. The United States Supreme Court has held that a "defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel . . . , and [it] emphasized that although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored.'" *Godinez*, 509 U.S. at 400; see *Faretta*, 422 U.S. at 836 (holding defendant's "technical legal knowledge . . . was not relevant to an assessment of his knowing exercise of the right to defend himself"); *Bunyard*, 307 Kan. at 470-71 (same); *Jones*, 290 Kan. at 377 (citing *Godinez*).

If courts used a technical- or knowledge-based examination of a defendant's competence to effectively handle the trial and present a defense, most self-represented litigants would fall short. Several things Burden did or did not do (such as not moving to suppress evidence) suggest she lacked the skill and knowledge an attorney would have exercised. But the fact the jury found her not guilty on one count suggests she was not totally ineffective. Either way, Burden's lack of technical skill is not our measuring stick.

That said, the right of self-representation is not absolute. For instance, a defendant can forfeit the right to self-representation by "deliberately engag[ing] in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46. Burden suggests another exception arises from *Edwards*, 554 U.S. 164, which she argues required the district court

judge to prevent her from exercising her right of self-representation because of her mental illness.

Her argument presents a legal question of whether a judge may refuse to allow a criminal defendant to exercise his or her constitutional right of self-representation because of mental incompetence and, if so, what standard applies. Appellate courts exercise de novo review over this legal question. See *Bunyard*, 307 Kan. at 470 (holding that the extent of the right to assistance of counsel and the related right to self-representation is a question of law subject to unlimited review).

Yet, "the trial judge, particularly one such as the trial judge in this case, who presided over one of [the] competency hearings and . . . trial[], will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 177. Thus, when applying the facts to a standard to determine mental competency to represent oneself, we review the trial record under an abuse of discretion standard. See *Marshall*, 303 Kan. at 444 (same for mental competency of defendant to stand trial); *State v. Cameron*, 300 Kan. 384, 391, 329 P.3d 1158 (2014) (same for competence of a witness); see also *In re Care & Treatment of Cone*, 309 Kan. 321, 325, 435 P.3d 45 (2019) (legal questions reviewed de novo; conclusions drawn from the facts reviewed for an abuse of discretion).

As Burden argues, the United States Supreme Court's decision in *Edwards*, 554 U.S. 164, guides our de novo review of the legal question. In *Edwards*, an Indiana trial court found Ahmad Edwards mentally incompetent under the *Dusky* standard. After he received seven months of treatment for schizophrenia, the court found he had regained mental competency to stand trial. Some months later, Edwards' counsel asked for another evaluation after Edwards became delusional. The court again committed Edwards for treatment. Eight months of treatment followed before Edwards was found competent to

stand trial. At that time, he asked to represent himself but then decided to proceed with counsel. The jury found Edwards guilty on some charges but could not reach a verdict on charges of attempted murder and battery. Before the retrial, Edwards reasserted his right of self-representation. The trial court denied his request and, after referring to the large record of psychiatric reports and Edwards' history of schizophrenia, found Edwards mentally incompetent to represent himself.

The Indiana Supreme Court reversed Edwards' conviction. *Edwards v. State*, 866 N.E.2d 252, 260 (Ind. 2007), *vacated* 554 U.S. 164 (2008). The Indiana Supreme Court first noted that *Faretta* held that "'to force unwanted counsel on a defendant 'violates the logic' of the Sixth Amendment." 866 N.E.2d at 255 (quoting *Faretta*, 422 U.S. at 820). It then cited *Godinez*, in which the United States Supreme Court had upheld use of the *Dusky* standard for determining a defendant's competence to waive the right to counsel and to enter a guilty plea. *Edwards*, 866 N.E.2d at 256.

The United States Supreme Court took a different view of the binding effect of both *Faretta* and *Godinez*. The Court determined that, while *Faretta* recognized the right to self-representation, it did not address whether mental illness would impact that right. *Edwards*, 554 U.S. at 171. And the Court distinguished *Godinez*, even though it acknowledged that *Godinez*, like *Edwards*, "involve[s] a mental condition that falls in a gray area between *Dusky*'s minimal constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for another legal purpose" such as the right to represent oneself. 554 U.S. at 173.

In distinguishing *Godinez*, the *Edwards* Court cited several reasons. Two are particularly relevant to our discussion. First, the Court pointed out that, "[i]n *Godinez,* the higher standard sought to measure the defendant's ability to proceed on his own to enter a guilty plea; here the higher standard seeks to measure the defendant's ability to conduct

trial proceedings." 554 U.S. at 173. The Court recognized that "an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." 554 U.S. at 175-76. Second, *Edwards* raised the question of whether a State could *deny* a defendant's request to represent oneself as compared to *Godinez*' holding that a State could *permit* a defendant to represent himself in entering a guilty plea. 554 U.S. at 173-74.

Thus, the *Edwards* Court determined, it faced the open question of whether the United States Constitution "permits a State to limit that defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." 554 U.S. at 174. In answering this question, the United States Supreme Court reversed the Indiana Supreme Court. The Court held that "the Constitution *permits* States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from *severe mental illness* to the point where they are not competent to conduct trial proceedings by themselves." (Emphasis added.) 554 U.S. at 178.

Burden first argues that *Edwards* required the trial court to explicitly evaluate her mental competence to represent herself before accepting her waiver of her right to counsel. But that argument flips *Edwards*' holding from *permitting* states to use a higher standard to *requiring* states to do so. In other words, "The Constitution *may* have allowed the trial judge to block his request to go it alone, but it certainly didn't require it." *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009).

Burden suggests the Court of Appeals erred by not recognizing the possibility of denying a request and, instead, left no room for a district court to find a defendant lacked the competency to self-represent. We are not convinced that is accurate. See *Burden*,

12

2017 WL 5507728, at *3 ("'No separate finding of mental competence, apart from competence to stand trial, is *necessary* before a defendant may exercise the right of self-representation.'" [Emphasis added.] [quoting *State v. McCall*, 38 Kan. App. 2d 236, Syl. ¶ 1, 163 P.3d 378 (2007)]). But, in case others might read the Court of Appeals' holding in that way, we clarify that *Edwards* allows a district court judge to deny a request to waive counsel if a defendant has a severe mental illness. See *Edwards*, 554 U.S. at 178.

As to Burden's second argument that the judge needed to use a more rigorous standard than *Dusky*, *Edwards* did recognize that the two evaluations—one assessing competence to stand trial and the other competence to represent oneself—demanded different degrees of mental competency and that mental illness covers a broad spectrum so that meeting one standard did not mean both were always satisfied. The Court noted that "the nature of the problem before us cautions against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself." 554 U.S. at 175. Yet, despite the discussion of reasons courts could—and should—use two standards, *Edwards* stopped short of setting out a required standard for determining whether a defendant is mentally competent to do so. It left to trial courts to "take [a] realistic account of the particular defendant's mental capacities." 554 U.S. at 177.

Like the Court in *Edwards*, we decline Burden's invitation to define the condition that might induce a trial court to take the step of refusing a defendant's request to waive counsel. See 554 U.S. at 178 (declining to endorse federal constitutional standard proposed in state's brief because Court was "sufficiently uncertain . . . as to how that particular standard would work in practice," noting "[w]e need not now, and we do not, adopt it"). Doing so here is even more inappropriate because this case does not meet the

basic threshold set out in *Edwards* for the circumstance where a state might deny the constitutional right of self-representation. That circumstance arises if a defendant has a "severe mental illness." *Edwards*, 554 U.S. at 178; 554 U.S. at 175 (using term "'mental derangement'"); see *State v. Warren*, No. 110,949, 2015 WL 4879034, at *10 (Kan. App. 2015) (unpublished opinion) (rejecting *Edwards* competency claim after concluding the record "has not shown any incapacity due to mental illness or incompetency").

Edwards, for example, was schizophrenic and delusional and had long periods of hospitalization and treatment after charges were filed and before trial. In contrast, the record does not suggest Burden had a severe mental illness. *Berry*, 565 F.3d 385, presented a similar situation.

In *Berry*, after a trial court allowed a defendant to represent himself, the defendant argued the court should not have allowed him to do so because of his bizarre behavior. The Seventh Circuit suggested a court needed some evidence of a severe mental illness as a condition precedent to denying a defendant's right of self-representation, and held that under the facts of that case the defendant had not made such a showing:

> "So even if we were to read *Edwards* to require counsel in certain cases—a dubious reading—the rule would only apply when the defendant is suffering from a 'severe mental illness.' Nothing in the opinion suggests that a court can deny a request for self-representation in the absence of this. Because there was no evidence before the trial court showing that [the defendant] had such an affliction, *Edwards* was simply off the table." 565 F.3d at 391.

We agree.

Given that, we reject Burden's final point that the district court judge erred in not finding her incompetent to represent herself. The record, at most, shows Burden had a

few outbursts in court, tended to engage in narrative questions, and went far afield when seeking to admit evidence. Her outbursts appear to be related to a belief that invoking dubious jurisdictional arguments would shield her from prosecution. This is not uncommon among self-represented litigants. See *Requena v. State*, 310 Kan. 105, 110-11, 444 P.3d 918 (2019) (fact-findings unnecessary to resolve sovereign citizen claim, argument has no conceivable validity in American law); *State v. Robertson*, 309 Kan. 602, 607, 439 P.3d 898 (2019) (no caselaw supports jurisdictional argument and defendant cannot succeed by arguing district court lacked jurisdiction because complaint incorrectly listed his name and identified him as a trust instead of an individual; alleged criminal actor is object of criminal personal jurisdiction). Nor is it unusual for a self-represented litigant to exhibit a profound lack of understanding of relevance or other evidentiary issues. On paper, the trial transcripts do not show an incompetent person, and there is no medical evidence in the record to support a finding of severe mental illness. In fact, the mental competency evaluation stated that "it is this evaluator's opinion that Ms. Burden has no significant impairment that is psychiatric in nature."

The record also shows a district court judge who was engaged with the defendant and observed and evaluated her behavior. As *Edwards* pointed out, the judge was in the best position to "make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." 554 U.S. at 177. Without an indication Burden suffered from a severe mental illness, we find no basis to conclude the district court judge abused his discretion when he allowed Burden to waive her right to counsel and to represent herself before the jury.

We affirm Burden's convictions.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

KAY HUFF, District Judge, assigned.[1]

NUSS, C.J., not participating.[2]

––––––––––––––––––––

[1]**REPORTER'S NOTE:**  District Judge Rogers was appointed to hear case No. 120,600 vice Justice Wilson under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

[2]**REPORTER'S NOTE:**  Justice Nuss heard oral arguments but did not participate in the final decision in case No. 120,600. Chief Justice Lawton R. Nuss retired effective December 13, 2019.