NOT DESIGNATED FOR PUBLICATION

No. 122,738

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER BLACKLOCK,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed December 17, 2021.
Affirmed.

*Richard P. Klein*, of Olathe, for appellant, and *Christopher Blacklock*, appellant pro se.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., GREEN and ISHERWOOD, JJ.


PER CURIAM: Christopher Blacklock appeals from the district court's denial of his K.S.A. 60-1507 motion. On appeal, Blacklock asserts four issues: First, whether the district court erred in allowing him to proceed pro se during part of his jury trial; second, whether the district court erred in finding that his trial counsel was not ineffective; third, that the district court erred in finding no prosecutorial error; and fourth, that the district court erred in failing to grant him relief on a jury instruction issue. Some of Blacklock's claims were summarily dismissed while the district court held an evidentiary hearing on others. Finding no error, we affirm the district court's denial of Blacklock's motion.

1

FACTS

On August 11, 2011, a jury convicted Christopher Blacklock of second-degree murder, possession with intent to distribute marijuana, and possession of drug paraphernalia. Later, the district court sentenced Blacklock to a 311-month prison term. On direct appeal, a panel of this court affirmed Blacklock's convictions and his sentence. *State v. Blacklock*, No. 107,466, 2014 WL 3731885 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1012 (2015). Because the underlying facts are stated in the previous opinion, they will not be repeated here. Rather, those facts will be discussed as necessary in the Analysis portion of this opinion.

After a mandate was issued in the direct appeal, Blacklock filed a pro se K.S.A. 60-1507 motion that was later supplemented by counsel. On December 3, 2018, the district court held a nonevidentiary hearing at which several of the claims asserted by Blacklock were summarily dismissed. The district court held an evidentiary hearing on Blacklock's remaining claims on January 11, 2019. Blacklock chose to represent himself during both hearings. At the evidentiary hearing, both Blacklock and his former trial attorney testified. At the conclusion of the hearing, the district court denied the remaining claims asserted in Blacklock's K.S.A. 60-1507 motion.

On February 22, 2019, Blacklock filed a timely notice of appeal from the denial of his K.S.A. 60-1507 motion. Blacklock's appellate counsel filed a brief on behalf of his client. In his brief, Blacklock's attorney asserts—for the first time—that the district court erred in allowing his client to represent himself during part of the jury trial. In addition, we granted Blacklock's request to file a pro se supplemental brief. In his supplemental brief, Blacklock claims that his trial attorney was ineffective and alleges prosecutorial error. Blacklock also argues in his supplemental brief that the district court erred in instructing the jury.

ANALYSIS

A district court has three options when handling a K.S.A. 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

The standard of review depends on which of these options a district court used. 308 Kan. at 504.

Here, the district court summarily denied some of the claims asserted in Blacklock's K.S.A. 60-1507 motion at a nonevidentiary hearing and denied the remaining claims on the merits at an evidentiary hearing. For that reason, we review the issues raised on appeal that arise out of the summary dismissal under a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). In contrast, we review the issues raised on appeal that arise out of the evidentiary hearing to determine whether the district court's findings of fact are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

*Self-Representation*

For the first time on appeal, Blacklock contends that the district court erred in granting his request to represent himself on the final day of his four-day jury trial.

Despite vigorously arguing at trial for the opportunity to represent himself, Blacklock now asserts that the district court denied him his constitutional right to counsel by granting his request to represent himself. However, based on our review of the record, we find that the district court appropriately advised Blacklock of his rights and allowed him to represent himself. We also find that the district court appropriately appointed standby counsel.

In general, issues not raised before the district court cannot be raised for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Still, there are several exceptions to the general rule, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Because the Sixth Amendment to the United States Constitution guarantees the right to counsel in a criminal prosecution, we find that the ends of justice will be served to consider this issue on the merits. See *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012).

In *State v. Burden*, 311 Kan. 859, 863-64, 467 P.3d 495 (2020), the Kansas Supreme Court reviewed the procedure to be followed by a district court in determining a defendant's request for self-representation:

> "This court has suggested a three-step framework for a district court judge to use in determining if a waiver is knowing and intelligent. First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case. *State v. Buckland*, 245 Kan. 132, 138, 777 P.2d 745 (1989).

4

"To assure the defendant appreciates the consequences of waiving representation by counsel, *Buckland* suggests the court explain that the defendant will be held to the same standards as an attorney; that the judge will not assist in or provide advice about presenting a defense; and that it is advisable to have an attorney because many trial techniques, evidence rules, and the presentation of defenses require specialized training and knowledge. 245 Kan. at 138; see *Bunyard*, 307 Kan. at 475-76 (citing a seven-step checklist found in Cateforis, Kansas Criminal Law 11-9 [5th ed. 2016]).

"This court has not required use of a checklist, however. Instead, courts weigh whether a defendant has knowingly and intelligently waived the right to counsel by examining the circumstances of each case. *State v. Armstrong*, 240 Kan. 446, 453, 731 P.2d 249 (1987)."

Here, a review of the trial transcript reveals that the district court advised Blacklock of his right to counsel and warned him against representing himself. The district court also advised Blacklock of the potential ramifications of self-representation as well as of the limited role played by standby counsel. Nevertheless, Blacklock insisted on representing himself. The record also reflects that Blacklock's decision was knowingly and intelligently made.

On the morning of the second day of the jury trial, Blacklock first conveyed an interest in representing himself. Specifically, Blacklock expressed an interest in being allowed to question the witnesses and potentially recalling one of the State's witnesses. After the district court warned him of the potential dangers of self-representation in a criminal jury trial, Blacklock dropped his request but suggested that he might want to raise the issue again at a later point in the trial. In particular, the district court warned Blacklock:

"I don't know what your legal training is but I just say it's a very dangerous move on your part, it's risky, has a lot of risk and your lawyers can talk to you about it. You have a right to represent yourself if you want—and I know they have policies and so forth. I have had

trials where I had standbys, where defendants try the case themselves and have standby counsel in case they want a lawyer as the thing goes along. We deal with it as we get to it. It can cause big problems in your case. I don't think it's an issue now because this is not the witness you want to ask questions of."

The next morning, at the beginning of the third day of trial, Blacklock again expressed an interest in potentially representing himself and asking questions of witnesses. In response, the district court advised Blacklock that if he chose to represent himself, his attorneys would only be permitted to serve as standby counsel to answer his questions. Following the court's explanation of the role of standby counsel, Blacklock decided to allow his attorneys to continue to represent him for the rest of the day.

The next morning, at the start of the final day of the trial, Blacklock once again expressed a desire to represent himself and to recall one of the State's witnesses. As it had done before, the district court advised Blacklock of the dangers of proceeding pro se. The district court also explained, again, the role of standby counsel. After granting a recess to allow him to consult with his attorneys, Blacklock decided to proceed pro se. The district court granted Blacklock's request and appointed his attorneys to serve as standby counsel. Blacklock then represented himself for the rest of the trial, examining the remaining witnesses, calling a rebuttal witness, and presenting closing argument.

In sum, a review of the record reveals that Blacklock insisted on having the right to proceed pro se even though the district court advised him of his rights and warned him several times of the potential dangers and obligations of self-representation. Despite the district court's repeated warnings, Blacklock persisted in his request. We thus conclude that the district court fulfilled its obligations under the *Buckland* and *Burden* framework to advise Blacklock of his rights as well as of the potential consequences of waiving his rights. As a result, we conclude that Blacklock's decision to represent himself was both knowingly and intelligently made.

Further, we are not persuaded by Blacklock's additional argument that the district court erred by allowing him to represent himself because of possible mental deficiencies. In *Burden*, our Supreme Court found that "there is no error when a court does not appoint counsel for a defendant who wishes to exercise the right of self-representation if there is no evidence of the defendant's severe mental illness." 311 Kan. 859, Syl. ¶ 2. We find nothing in the record to suggest that Blacklock suffered from a severe mental illness as required by *Burden*. In fact, Blacklock acknowledges that he has been found to be competent to stand trial by a mental health professional appointed by the district court as well as by one retained by the defense.

Our Supreme Court also explained in *Burden* that district courts are "in the best position to 'make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." 311 Kan. at 870-71. In this case, the district court not only had the competency examinations to review but also had the ability to observe Blacklock over the course of the proceedings in order to determine whether he had the ability to make the decision to waive his right to counsel.

Although Blacklock may now regret his decision to represent himself at trial, we do not find that he was incompetent to make this decision nor do we find that he was incapable of representing himself. As a result of the district court appointing standby counsel, Blacklock had the opportunity to ask questions about trial procedure or related issues. Furthermore, considering the overwhelming evidence presented at trial—including Blacklock's admission that he stabbed the victim multiple times—we do not find it likely that the outcome of this case would have been any different had Blacklock continued to be represented by counsel throughout the trial.

We note that Blacklock candidly admits that the holding in *Burden* goes against his argument in this case. Instead, Blacklock asserts that he simply disagrees with the holding in *Burden*. Nevertheless, we are "duty bound to follow Kansas Supreme Court

7

precedent absent some indication that the court is departing from its previous position." *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Blacklock has presented us with no basis to conclude that our Supreme Court is departing from its position in *Burden*. For that reason, we find no error in the district court's assessment of Blacklock's competency to represent himself.

*Ineffective Assistance of Counsel*

Next, Blacklock contends that trial counsel ineffectively represented him by failing to impeach a co-defendant based on his plea agreement, by failing to call a witness, and by failing to present the criminal history of the victim. The district court summarily dismissed Blacklock's argument regarding the co-defendant's plea agreement. In addition, following the evidentiary hearing, the district court denied Blacklock's remaining ineffective assistance of counsel claims.

In *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019), the Kansas Supreme Court explained:

> "To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984])."

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965,

8

970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Blacklock argues that his trial attorneys were ineffective at trial by failing to impeach co-defendant Leshaun Curtis about his plea agreement with the State. In his pro se brief, Blacklock frames this issue as one of prosecutorial error. Even so, because the district court addressed the issue as part of Blacklock's ineffective assistance of counsel claim, we will do the same. Notwithstanding, we note that the result would be the same no matter if we addressed this issue as a claim of prosecutorial error or a claim for ineffective assistance of counsel.

In summarily denying Blacklock's argument, the district court found that—contrary to Blacklock's assertions—the co-defendant did not receive leniency from the State because he agreed to testify against Blacklock. Specifically, the district court found:

> "THE COURT: And the judge sustained Ms. Hill's request to prevent them from talking about . . . Curtis's plea agreement, because he received no consideration, he received no leniency for testifying, which is what would have made it relevant in your case, but because he was given no leniency for testifying, their plea agreements were irrelevant and they were not hidden from the defense attorneys. The defense attorneys knew about them.
>
> " . . . .
>
> "THE COURT: The basis for the departure was that the defendant accepted responsibility for his acts, that the degree of harm was atypical, that he had a support group who could help him, and that there were efforts at rehabilitation.

9

"That's—those are the grounds that were submitted by the State for leniency, not that he was going to testify in your case."

The district court concluded "that plea agreement for . . . Curtis was [not] relevant to your case for impeachment purposes. So I am summarily denying that issue." Blacklock has failed to present us with any reason to question the district court's ruling on this issue. He has also failed to submit a copy of Curtis' plea agreement as part of the record on appeal. As a result, there is no evidence to support Blacklock's allegation that Curtis received leniency for testifying against him at trial. Accordingly, we find that the motion, files, and records of the case conclusively establish that Blacklock is not entitled to relief on this claim no matter how it is framed.

Next, Blacklock argues that his trial attorneys were ineffective by failing to call another inmate, Ronrico Nesbitt, to testify and by failing to present evidence of the victim's criminal history to the jury. The district court considered both arguments at the evidentiary hearing. One of Blacklock's trial attorneys, Heather Huston, testified at the hearing about the preparation for—and the presentation of evidence at—Blacklock's jury trial. Significantly, Hutson testified that she did not receive a statement from Blacklock regarding Nesbitt's desire to testify at trial. Likewise, despite having the chance to call Nesbitt as a witness at the evidentiary hearing, Blacklock did not do so.

Blacklock did proffer a recording of a statement given by a man purporting to be Nesbitt. Yet, the date of the recording and the circumstances surrounding it being made are unclear from the record on appeal. Blacklock suggests that a woman named Barbara Baker signed an affidavit about what Nesbitt allegedly told her. Even so, neither the recording nor the affidavit was admitted into evidence at the evidentiary hearing. Likewise, neither the recording nor the affidavit is in the record on appeal and we cannot determine their contents. Rather, we must rely on the hearing transcript.

10

A review of the transcript reflects that the district court listened to the recording prior to the evidentiary hearing. Likewise, the district court noted that it had read the affidavit of Barbara Baker. Huston also testified about her strategic decisions at trial—including her decision not to attempt to introduce evidence about the victim's prior criminal history. In addition, Huston testified that evidence about the victim's "dangerous" character was introduced at trial. This evidence included his prior gang affiliations and his participation in a drug-trafficking ring.

At the end of the evidentiary hearing, the district court determined that Blacklock failed to substantiate his claims of ineffective assistance of counsel. In particular, the district court found it significant that Blacklock did not seek to call Nesbitt as a witness at the evidentiary hearing. Further, the district court determined that Blacklock's trial attorneys chose not to attempt to introduce evidence about the victim's prior conviction because their client was unaware of it when the stabbing occurred. In addition, the district court found that Blacklock was not prejudiced by the alleged ineffectiveness of counsel because other evidence about the victim's character had been presented at trial.

As discussed above, when a district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, we review its factual findings using a substantial competent evidence standard. On the other hand, we review the district court's legal conclusions based on those facts applying a de novo standard of review. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018). Here, based on our review of the record on appeal, we find that the district court's factual findings were supported by substantial competent evidence. We also find that the district court's legal conclusions based on those findings were appropriate.

By failing to call Nesbitt as a witness at the evidentiary hearing to explain what his trial testimony would have been—and by failing to include the recording in the record on appeal—we can only speculate about his testimony had he been called as a witness at

11

trial. Likewise, Blacklock submits no evidence to contradict the district court's conclusion that the victim's prior conviction for assault with a deadly weapon was properly excluded from evidence. This failure is particularly true because the record reflects that Blacklock did not know about this conviction when he killed Ziahdrick Williams. As a result, the victim's conviction was not material to Blacklock's theory of self-defense. We also agree with the district court's conclusion that Blacklock was not prejudiced by the exclusion of the victim's prior conviction because substantial evidence of the victim's violent character was presented at trial. Consequently, we conclude that the district court properly denied Blacklock's claims of ineffective assistance of counsel.

*Prosecutorial Error*

Blacklock further contends that the State committed prosecutorial error by allegedly misrepresenting evidence about the victim's injuries. In particular, Blacklock argues that the State incorrectly told the jury that the victim had "19 stab wounds." This claim was summarily dismissed by the district court. As such, we review this issue de novo to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair*, 308 Kan. at 293.

To begin, we find that the district court was correct in finding that Blacklock cannot assert new arguments regarding alleged trial errors in a K.S.A. 60-1507 motion. Specifically, Kansas Supreme Court Rule 183(c)(3) (2021 Kan. S. Ct. R. 239) provides:

> "A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."

In this regard, Blacklock articulates no exceptional circumstances to justify his failure to raise this argument in his direct appeal. We find this failure to be particularly significant because although Blacklock asserted prosecutorial error on direct appeal, he did not argue that the prosecutor's reference to "19 stab wounds" was erroneous. See *Blacklock*, 2014 WL 3731885, at *14-15. As a result, we conclude that the district court correctly dismissed Blacklock's new argument of prosecutorial error.

Likewise, even if Blacklock had raised this argument in his direct appeal, we do not find it to be supported by the record. A review of the record reveals that on the first day of Blacklock's jury trial, Dr. Michael S. Handler—the coroner who performed an autopsy on Williams' body—testified that there were 19 new wounds. Accordingly, we conclude that the prosecutor's statement about "19 stab wounds" was reasonable based on the evidence and did not "fall outside the wide latitude afforded prosecutors to conduct the State's case . . . ." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Even if we were to assume that the State misstated the evidence, any error would be harmless because it is undisputed that Blacklock stabbed Williams multiple times. The only issue for the jury to decide was whether Blacklock did so in self-defense. Blacklock has made no argument to explain how the exact number of stab wounds impacted his ability to defend himself at trial. Thus, we find that the motion, files, and records of the case conclusively establish that Blacklock is not entitled to relief on his claim of prosecutorial error.

*Jury Instructions*

Finally, Blacklock contends that the district court erred in instructing the jury. Specifically, Blacklock challenges jury instruction No. 19 on appeal. Blacklock raised the same challenges in his direct appeal, which a panel of this court denied for lack of adequate briefing. In summarily dismissing this claim, the district court cited the opinion

of the Court of Appeals panel on direct appeal and then appropriately applied res judicata principles to Blacklock's claim of instructional error.

In *Blacklock*, 2014 WL 3731885, at *16, the panel found:

"Blacklock also argues that the instructions on possession of a controlled substance and possession of drug paraphernalia were erroneous. Blacklock then cites a lengthy discussion on a question the jury sent the district court during deliberations, which is the extent of his argument. Because Blacklock raised this issue but did not argue it or support it with pertinent authority, Blacklock has abandoned this argument. *Llamas,* 298 Kan. at 264 (a point raised incidentally in a brief and not argued in it is deemed abandoned); *Tague,* 296 Kan. at 1001 (failure to support a point with pertinent authority or to show why it is sound despite lack of supporting authority is the same as failing to brief the issue)."

As a result, we find that the district court properly determined that this issue has previously been decided by a panel of this court and that decision is binding on Blacklock. In particular, the district court found that the issue—as well as another instructional issue that is not material to this appeal—"were dealt with by the court of appeals, and therefore, raising them a second time is res judicata." We find the district court's determination to be consistent with Kansas law, which provides that where a direct appeal is taken, the judgment of the appellate court is res judicata as to all issues raised as well as those that could have been raised. *Salary*, 309 Kan. at 482 (citing *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 [2014]). We thus conclude that the district court's summary dismissal of this claim was appropriate as a matter of law.

CONCLUSION

In conclusion, we find that the district court's summary dismissal of some of the claims asserted in Blacklock's K.S.A. 60-1507 motion was appropriate because the motion, files, and records of the case conclusively establish that he is not entitled to

relief. Likewise, we find that the district court's denial of Blacklock's remaining claims was appropriate based on the evidence—or lack thereof—presented at the evidentiary hearing. Based on our review of the record on appeal, we find that the district court's factual findings were supported by substantial competent evidence and that these findings were sufficient to support the district court's conclusions of law. We, therefore, affirm the district court's denial of the claims asserted in Blacklock's K.S.A. 60-1507 motion.

Affirmed.