No. 60,549

STATE OF KANSAS, *Appellee,* v. STEPHEN L. BUCKLAND, *Appellant.*

(777 P.2d 745)

Opinion filed July 14, 1989.

*Karen E. Mayberry,* assistant appellate defender, argued the cause, and *Benjamin C. Wood,* former chief appellate defender, and *Jessica R. Kunen,* chief appellate defender, were with her on the briefs for appellant.

*Edwin A. Van Petten,* deputy attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

Six, J.: This case is before us on a petition for review of the decision of the Court of Appeal. It focuses on a defendant's waiver of the right to counsel and the right of a pro se defendant to be represented at a sentence modification hearing when the State appears in opposition to the motion.

Stephen L. Buckland, the defendant who represented himself at trial, was convicted of one count of selling cocaine.

Buckland raised four issues before the Court of Appeals: (1) Did the trial court adequately determine that Buckland knowingly and intelligently waived his Sixth Amendment right to counsel? (2) Was there sufficient evidence to find Buckland guilty of willfully furthering the success of the drug venture? (3) Did the prosecutor's remarks during closing argument constitute reversible error? (4) Did the trial court commit reversible error when it denied Buckland's request to appear in person at the hearing on his motion to modify sentence?

The Court of Appeals, in an unpublished decision filed December 29, 1988, reversed Buckland's conviction on the basis that the trial court did not adequately determine that Buckland knowingly and intelligently waived his right to counsel. Because of its right to counsel holding, the Court of Appeals did not address the remaining issues.

## Facts

Special Agent Steve Elsen of the Kansas Bureau of Investigation met Stephen Buckland through Buckland's brother, Anthony (Tony) Buckland. Elsen and Tony discussed arrangements for Elsen to purchase a large quantity of cocaine from Tony.

The purchase was to take place within the next week. Stephen Buckland suggested the location for the transaction. Stephen also asked if Elsen wanted to purchase all of the cocaine that "we [indicating he and Tony] have on hand" and told Elsen that he

did not like to make too many plans in advance as they had a way of falling through. Elsen testified that, based on this conversation, he felt that Tony and Stephen had an equal say in the business transaction. Elsen also testified that Tony had mentioned his brother, Stephen, several times during the course of their previous dealings and had told him that Stephen also "dealt."

On October 29, 1985, Elsen and another KBI agent met Tony and Stephen at a service station on Interstate 470 in Topeka. Tony told Elsen that they were going for a ride and that Stephen would follow them. Tony entered Elsen's vehicle with the two agents. Elsen testified that while they were driving, Tony removed a plastic Ziploc bag containing a white powder from a cigarette carton. Elsen said that Tony pointed out the "rocks" in the powder and commented on the quality of this particular cocaine.

Upon arriving at the first rest area west of Topeka on Interstate 70, Tony instructed Elsen to park near the far end. Stephen parked his vehicle directly behind Elsen's vehicle. Shortly afterward, another Buckland brother, Jeffrey, pulled into the rest area behind Stephen. Elsen performed a "field test" to determine the quality of the cocaine. He then counted out $23,400 for three-quarters of a pound of cocaine. As Stephen and Tony attempted to leave the rest area, they were arrested by other law enforcement agents.

Stephen Buckland was charged with sale of cocaine, a class C felony, pursuant to K.S.A. 1988 Supp. 65-4127a. He was initially represented by attorney Michael Harris. At a pretrial hearing on June 13, 1986, Harris told the court that he and Buckland had some serious differences over how the case should be defended and that he felt he could no longer effectively represent Buckland. Buckland told the court that he intended to retain other counsel, but that he would need some time to locate another attorney. At this time, Judge Klinginsmith made the following comments to Buckland:

"You're not going to be given forever to do this. You're either going to have to proceed in this matter in your own behalf or counsel or substitute counsel. I would urge for your benefit only that you have the benefit of counsel. The law does not recognize as counsel anyone who is not law trained. Any lawyer who is law trained by way of presenting a defense for you or giving advice to you in

connection with the charges pending against you is going to advise you of what the law is, not what someone thinks it ought to be."

The court told Buckland that he had until July 1, 1986, to retain counsel and to have counsel enter an appearance. The court advised Buckland, "If you do not have counsel by that time I'm going to assume one of two things: You're either going to represent yourself, which I advise you not to do; or you are going to be filing an affidavit and requesting the Court to appoint counsel for you."

The court further said, "This matter is set and you are directed to appear before me in Alma at 9:00 a.m. on July 9th, with counsel present. If you do not have counsel you are to appear in person in any event and we'll see where we go from there."

On July 9, pursuant to the date set by the trial court, both Tony and Stephen Buckland appeared on the issue of counsel (Tony's attorney of record had also withdrawn). When questioned about counsel, Stephen stated that he was not prepared to address this issue as he thought it was set for July 15. Buckland states in his supplemental brief:

"First, the scheduled date for Mr. Buckland's hearing was July 15th. The hearing on July 9th was that scheduled for his brother, Anthony. Nevertheless, when Stephen arrived at the court-house, Judge Klinginsmith forced him to participate, basically rescheduling his hearing date simply because he was present at his brother's hearing. When Stephen attempted to challenge the judge's action on the basis that he was not prepared to proceed on July 9th, the court ignored the argument and required Stephen to participate in the proceedings."

We find no support in the record for Buckland's assertion.

Apparently, both brothers wished to have a person who was not a licensed attorney represent them. The following discussion occurred between the Bucklands and the court on July 9:

"THE COURT: The court will appoint an attorney for either of you if you wish, if you cannot afford to hire one. Give me an affidavit. Are either of you asking the court to appoint counsel for you?
"ANTHONY BUCKLAND: No I'm not your honor.
"THE COURT: Stephen Buckland, are you asking the court to appoint counsel for you?
"STEPHEN BUCKLAND: Your honor, I want to take this up on the 15th, the time set certain.
[As we have noted, the trial court on June 13, 1986, set the appearance date for July 9, 1986.]
"THE COURT: We're going to take it up this morning. Are you asking this court to appoint counsel for you?
"STEPHEN BUCKLAND: No sir.

"THE COURT: Are you waiving your right to be represented by a lawyer?
"STEPHEN BUCKLAND: No sir.
"THE COURT: Are you waiving your right to be represented by a licensed, practicing attorney?
"STEPHEN BUCKLAND: No sir.
"THE COURT: Are you going to retain one?
"STEPHEN BUCKLAND: I am looking at counsel of choice your honor.
"THE COURT: You're not going to have counsel of choice if you expect that person to be seated before the bar and if you expect that person to ask questions in your behalf.
"STEPHEN BUCKLAND: Your honor, I'm not prepared at this time to take up that argument.
"THE COURT: That is an argument we're taking up this morning. You are either proceeding pro se or I will appoint an attorney for you, if you choose to have one appointed, provided you qualify.
"STEPHEN BUCKLAND: Your honor, I am not here pro se.
"THE COURT: Are you asking the court to appoint an attorney for you?
"STEPHEN BUCKLAND: No sir.

. . . .

"THE COURT [addressed to Anthony Buckland]: I am not here to give you a lesson in law, Mr. Buckland.
"ANTHONY BUCKLAND: I understand that, your honor.
"THE COURT: You are here and you will be bound by the same rules as any practicing lawyer.
"ANTHONY BUCKLAND: I am not a practicing lawyer. All of my papers say in propia persona, your honor.
"THE COURT: Now (interrupted).
"STEPHEN BUCKLAND: I object also, your honor."

Stephen Buckland filed a Financial Affidavit For Court-Appointed Attorney on August 13, 1986, over a month after the hearing and approximately a week before the trial was to begin. In subsequent appearances, however, Buckland did not request that counsel be appointed or indicate that he did not wish to proceed pro se. Buckland makes no mention of the affidavit in his briefs on appeal. Pursuant to the affidavit, the court ordered that the indigents defense service fund pay for a transcript of the first trial which was requested by Buckland.

Buckland's first trial resulted in a hung jury and a mistrial was declared. Buckland again appeared pro se at his second trial. Buckland testified that he had moved back to Topeka because his religious beliefs dictated that he try to help his brother move out of the drug business. Buckland called a character witness, Terry Crable, who described himself as an ordained minister. Crable said that he and Buckland prayed together and that Crable considered Buckland to be a child of God who loved

Tony, his brother. Cross-examination revealed that Crable had previously been arrested for disorderly conduct and for possession of marijuana. Crable also stated, "I don't think the State has a right to tell me whether I can use a substance that is grown on the earth by God, the sovereign."

In his closing argument, the prosecutor addressed Crable's credibility. He also commented on Buckland's religious beliefs and indicated that Buckland had conveniently become a Christian after his arrest.

The second trial resulted in a guilty verdict. The court sentenced Buckland to three to ten years. Buckland filed a motion to modify his sentence and requested that a copy of the State Rehabilitation and Diagnostic Center (SRDC) report be provided to him. Buckland also presented a probation plan to the court. The court set a hearing on the motion to modify but did not return Buckland for the hearing. The State appeared and addressed the court in opposition to Buckland's motion. The court did not provide Buckland with a copy of the SRDC report. The motion to modify was denied.

The Court of Appeals held that the record does not demonstrate that Buckland knowingly and intelligently waived his Sixth Amendment right to counsel. The court noted that there was no inquiry as to Buckland's financial ability to obtain counsel. It reversed and remanded the case for a new trial.

Right to Counsel

Waiver of the right to counsel must be knowingly and intelligently made and the determination of such a waiver depends on the particular facts and circumstances of each case. *Johnson v. Zerbst*, 304 U.S. 458, 82 L. Ed 1461, 58 S. Ct. 1019 (1938). The trial judge must make a thorough inquiry and take all steps necessary to ensure that the right to counsel is protected. *Von Moltke v. Gillies*, 332 U.S. 708, 722, 92 L. Ed. 309, 68 S. Ct. 316 (1948).

A number of Kansas cases have discussed the constitutional right to counsel and the "knowing and intelligent" waiver requirement. In *State v. Daniels*, 2 Kan. App. 2d 603, 586 P.2d 50 (1978), the Court of Appeals set forth guidelines for the determination that a waiver is knowingly and intelligently made. *Daniels* has been cited favorably by this court. See *State v. Martin*, 241 Kan. 732, 737-38, 740 P.2d 577 (1987); *State v.*

*Williams*, 226 Kan. 82, 83-84, 595 P.2d 1104 (1979). In *Daniels*, the court referred to the American Bar Association Standards Relating To the Function of the Trial Judge § 6.6 (Approved Draft, 1972), which state that the trial judge's inquiry should show that the defendant:

" '(*i*) has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

" '(*ii*) possesses the intelligence and capacity to appreciate the consequences of this decision; and

" '(*iii*) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.' " 2 Kan. App. 2d at 607-08.

In addition, the court suggested that the trial judge inform the defendant of the following:

"(1) that defendant will be held to the same standards as a lawyer; (2) that the trial judge may not aid the defendant in his defense; and (3) that it is advisable to have a lawyer due to the specialized knowledge necessary to conduct a trial and the fact that a lawyer is trained in the law." 2 Kan. App. 2d at 608.

A review of the transcripts of the June 13 and the July 9 hearings indicates that the *Daniels* guidelines were followed in this case. The court repeatedly advised Buckland to obtain new counsel or file an affidavit and have one appointed for him. Harris, Buckland's original attorney, also advised Buckland that it would be unwise to proceed without counsel. The court emphasized that Buckland could not be represented by a non-lawyer. A criminal defendant has no constitutional right to be represented by a non-attorney. *State v. Matzke*, 236 Kan. 833, Syl. ¶ 2, 696 P.2d 396 (1985).

The Court of Appeals appears to have based its decision on the fact the record did not reflect that Buckland understood his actions would result in a waiver of his right to counsel. At the time the trial court allowed Buckland's attorney to withdraw (June 13), the court informed Buckland that, if he had not obtained new counsel within the specified time frame, the court would assume that he was either proceeding pro se or that he would be filing an affidavit for appointment of counsel. At the July 9 hearing, the court again informed Buckland that the court would appoint counsel for him if he filed an affidavit. Buckland said he did not want counsel appointed, but he also stated that he was not waiving his right to be represented by an attorney. Although Buckland contended that he was not proceeding pro

se, he told the court that he was withdrawing the motions previously made by his attorney and that he was filing motions on his own behalf.

At oral argument, the appellate defender argued that standby counsel should have been appointed for Buckland. The appointment of standby counsel is within the sound discretion of the trial court. *Matzke*, 236 Kan. at 837. In *Matzke*, the defendant requested standby counsel. In the case at bar, Buckland consistently refused appointment of counsel.

A review of the record shows that Buckland was uncooperative with the court and indicates that his refusal to obtain counsel may have been a delay tactic. He was given from June 13 to July 1 to decide whether he wanted to obtain his own counsel, proceed pro se, or have counsel appointed for him. Because the hearing was not scheduled until July 9, he essentially had almost a month to decide how he wished to proceed. A review of the record also indicates that Buckland is of above-average intelligence. Testimony at both trials revealed that Buckland had been voted the most outstanding student at Texas Aero Tech in Dallas and had been awarded a $1,000 scholarship.

"[W]here the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense." *Faretta v. California*, 422 U.S. 806, 834, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

The trial court adequately determined that Buckland knowingly and intelligently waived his right to counsel.

## Sufficiency of the Evidence

Buckland was charged with and convicted of sale of cocaine pursuant to K.S.A. 1988 Supp. 65-4127a. At trial, the court gave the jury an instruction on aiding and abetting. Buckland contends that there was insufficient evidence to support a finding that he knowingly associated himself in the sale of cocaine and that he willfully furthered the success of the sale. Under K.S.A. 21-3205, aiders and abettors may be charged with and convicted of crimes as if they were principals. In *State v. Kliewer*, 210 Kan. 820, 823, 504 P.2d 580 (1972), we said, "Under 21-3205 . . . it is unnecessary that the appellant be advised of its provisions before they are applied and given effect."

We commented on K.S.A. 21-3205 in *State v. Burton,* 235 Kan. 472, 477, 681 P.2d 646 (1984):

"It is the rule in this state that mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt as an aider and abettor; however, when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury."

Buckland contends that all the evidence against him was circumstantial. In *Burton,* we said, "[E]ven the gravest offense may be sustained by circumstantial evidence." 235 Kan. at 478.

The statements made by Buckland to Agent Elsen were incriminating. Buckland never denied making the statements and his contention that the statements were made out of his desire to remove his brother from the drug business are not convincing. His actions at the service station and rest area the day of his arrest further indicated his involvement in his brother's drug business.

"Where defendant claims insufficiency of the evidence in a criminal case, an appellate court is required to review all the evidence in the light most favorable to the prosecution in determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Switzer,* 244 Kan. 449, Syl. ¶ 1, 769 P.2d 645 (1989).

There was sufficient evidence to support Buckland's conviction.

## The Prosecutor's Remarks

Buckland argues that certain statements made by the prosecutor in his closing argument were reversible error. The specific remarks to which Buckland objects to are:

"We heard one witness who testified to the character of the Defendant. Well, I will tell you that witness was a character. His credibility is zero. The Defendant and that witness both told you that, well, in certain situations they just don't feel like they're bound by our laws, but we are in this county and we must be.

"Defendant has you believe that this is a matter of faith for him but after his dissertation on his religious trainings I'm beginning to wonder what faith he's following. He is following the dictates of his Creator. I wonder if it's the Creator Brahma, Vishnu or Cyva, or if it is treason, trees or serpents. He doesn't even know, but it sounds good. I tell you this Defendant is in Wabaunsee County and he has become conveniently Christian, or as we in law enforcement refer quite often, he has a case of the situational ethics, and the situation he's now in he tries to be ethically [*sic*] and tell you he's against it, drug dealing."

We stated in *State v. Johnson,* 231 Kan. 151, 159, 643 P.2d 146 (1982):

"A prosecutor may appeal to the jury with all the power and persuasiveness his learning, skill, and experience enables him to use so long as his comments are confined to the evidence and reasonable inferences drawn therefrom. However, he is an officer of the court and is guilty of gross misconduct if he asserts facts to be true which he knows, or should have known, to be false."

Both parties cite *State v. Abu-Isba,* 235 Kan. 851, 685 P.2d 856 (1984). In *Abu-Isba,* we held that, although the statement by the prosecutor was improper, it did not constitute reversible error. 235 Kan. at 859. Abu-Isba was convicted of making a terroristic threat. Several witnesses testified that they took his threats seriously. In closing argument, the prosecutor said, "I guarantee you these gentlemen to whom he spoke these words took him seriously." 235 Kan. at 859. We held that the statements were merely a summation of the testimony. We concluded that, given the trial court's instructions to the jury, the comment made during closing argument did not have any effect on the jury's determination of guilt or innocence. 235 Kan. at 860.

In the case at bar, the evidence against Buckland was circumstantial. A reading of the transcript indicates that neither Buckland nor Crable were convincing in their assertions that Buckland was a religious man. Both confessed to the use of marijuana and expressed a belief that the State does not have the right to regulate the use of drugs. Even if Buckland were trying to guide or encourage his brother out of the drug business, the evidence indicated that he was as involved in the instant transaction as his brother.

In *Abu-Isba,* we said that, in order to find that the remarks are harmless error, the court must find beyond a reasonable doubt that the error had little likelihood of changing the result of the trial. 235 Kan. at 859. Buckland opened the issue of Crable's credibility by calling him as a character witness. In addition, it was Buckland who brought in testimony as to Buckland's religious beliefs and studies.

Buckland did not object to the prosecutor's remarks at the time they were made. In both *Johnson* and *Abu-Isba,* the defendant objected.

In *State v. Cunningham,* 222 Kan. 704, 567 P.2d 879 (1977), the defendant represented himself (the court found that the trial court did not err in allowing the defendant to appear pro se). On appeal, Cunningham contended that his right to a fair trial was

denied due to certain remarks made by the prosecutor during closing argument. This court said: "The record discloses that no objection was lodged at trial. Thus, the question was not preserved for our review. We have repeatedly held that reversible error cannot be predicated upon a complaint of misconduct of counsel in closing argument, where no objection was lodged." 222 Kan. at 707.

Buckland testified at length (six pages of the trial transcript) concerning his religious experiences, training, and beliefs. He shared with the jury his religious search through Edgar Casey, Lupsang Rompa, The Book of Tao, American Indian religions, Yoga, meditation, The Way, prauna, and Hinduism. Buckland testified that his involvement with his brother (Tony) was the result of his (Stephen's) Christianity.

The prosecutor's remarks can be characterized as reasonable inferences arising from the evidence at trial. Even if the remarks are viewed as improper, the error was harmless.

### The Motion to Modify

In *State v. Jennings*, 240 Kan. 377, 379, 729 P.2d 454 (1986), we held that the defendant has no right to a hearing on a motion to modify sentence. A defendant has no constitutional right to be personally present or to be represented by counsel at the consideration of a motion to modify sentence. (Citing *United States v. Donohoe*, 458 F.2d 237 [10th Cir. 1972].) Buckland asserts that *Jennings* can be distinguished because no hearing was held in *Jennings*. In the case at bar, a hearing on the motion to modify was held. The prosecutor was present and addressed the court opposing the motion.

Buckland contends that it is unfair to have a hearing on a motion to modify a sentence where the State is represented, but the defendant is not. We agree.

In *State v. Grantom*, 229 Kan. 517, 518-19, 625 P.2d 499 (1981), we stated: "To meet due process requirements, the sentencing procedure must afford a defendant the opportunity to deny or explain information considered in determining the appropriate sentence."

Where a hearing is held on a motion to modify and the State is represented, the defendant should also be represented either by counsel or in person if appearing pro se. Where the defendant appears pro se, as did Buckland, he should be permitted to appear on his own behalf at the modification hearing.

The judgment of the Court of Appeals is reversed. The defendant's conviction is affirmed. The case is remanded for a new hearing on Buckland's motion to modify his sentence.

ALLEGRUCCI, J., dissenting: I disagree with the majority's finding that the defendant intelligently and knowingly waived his right to counsel. The Sixth Amendment right to counsel is a fundamental constitutional right and, unless knowingly and intelligently waived, counsel must be provided to an indigent defendant. *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963). In holding that the right to counsel is a fundamental constitutional right, the Court in *Gideon* said:

"The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in *Powell v. Alabama*:

" 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' 287 U.S. at 68, 69." 372 U.S. at 344-45.

The question of whether a defendant has waived the right to counsel is a factual question and a court should exercise "every reasonable presumption" against waiver. *Brewer v. Williams*, 430 U.S. 387, 404, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977).

As the Court of Appeals noted, the defendant never requested to represent himself nor did he waive his right to counsel. The trial court specifically inquired of the defendant if he wished to appear pro se and he replied that he did not. He also responded to the court on several occasions that he was not waiving his right to counsel. The majority points out that the defendant was

uncooperative and that his failure to obtain counsel may have been a delay tactic. However, the trial court never determined if this defendant was financially able to hire counsel. A presumption that his failure to hire counsel was a delay tactic is not tantamount to a finding that he was financially able to hire counsel. The trial court's frustration with the defendant is understandable, but that does not justify the failure of the trial court to adequately determine if the defendant is indigent and if he intelligently and knowingly waived his Sixth Amendment right to counsel.

Absent a waiver, it is the trial court's responsibility to appoint counsel for an indigent defendant. The fact that the defendant was uncooperative and insisted upon counsel of his choice did not relieve the court of that responsibility.

I agree with the Court of Appeals' finding that the trial court did not adequately determine that the defendant knowingly and intelligently waived his Sixth Amendment right to counsel. I would reverse and remand for a new trial.