NOT DESIGNATED FOR PUBLICATION

No. 123,927

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARLTON WAYNE SOLTON JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed October 14, 2022. Reversed and remanded with directions.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM:  Carlton Wayne Solton Jr. appeals his conviction of criminal possession of a weapon. Solton claims that (1) the district court failed to secure a valid waiver of counsel before allowing him to proceed pro se; (2) the district court abused its discretion by permitting the State to amend its complaint during trial; and (3) the district court erred by failing to instruct the jury regarding his "innocent handling" theory of defense. Because the district court committed a structural error by failing to obtain a valid waiver of counsel from Solton before he represented himself at critical stages of the prosecution, we must reverse his conviction and remand for further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

On March 20, 2019, Special Agent Edward Mora of the Kansas Department of Corrections conducted surveillance outside a home where Solton was reportedly staying. According to Solton's parole officer, the house was not listed as Solton's residence, and Mora was tasked with locating Solton to determine whether he violated his parole. Around 9:45 a.m., Mora watched Solton leave the house and get into a red Nissan Pathfinder parked in the driveway. Mora approached the car with a fellow agent and spoke to Solton who was sitting in the front driver's seat with the engine running. Solton confirmed his identity and told Mora that he was taking the car to get it detailed. Mora then placed Solton in handcuffs and searched him.

Mora walked around Solton's car, and as he looked inside, he noticed a box in the backseat labeled "Century Arms" which he recognized to be a firearms manufacturer. Knowing that Solton was not allowed to possess firearms under his parole, Mora decided to search the car. Solton acknowledged the presence of the firearm—telling Mora that it was a rifle—but claimed that the weapon was not his and belonged to a woman named Ashley. Mora later confirmed through a firearm transaction record that the rifle was purchased by Ashley Hurde, who was also the registered owner of the Nissan Pathfinder and the house. Mora collected the rifle from the backseat, which was in a black nylon bag along with some ammunition. Solton told Mora that there was another rifle and a pistol inside the house. Mora found the pistol but did not locate the rifle. Hurde later told Mora that Solton "always has a gun with him."

On April 1, 2019, the State charged Solton with criminal possession of a weapon by a convicted felon, based on the rifle that Mora found in the backseat of the Nissan Pathfinder. At his first appearance before Judge Jared B. Johnson, Solton told the district court that he had a conflict with his appointed attorney, Stephen Brave—who had been appointed to represent him in another case—and he wanted to proceed pro se. Judge

2

Johnson told Solton that he could raise the matter of representing himself at a later hearing and that he would need to "sign a written waiver" to do so.

At a scheduling hearing a few days later before Judge Rene S. Young, Solton was represented by Brave, who requested the district court order a competency evaluation. Solton told the court that he did not want Brave to represent him. Judge Young ordered Solton to undergo a competency evaluation and told him that "if that evaluation comes back and you are competent to stand trial, you can make that decision if you want to represent yourself you can let me know at that time. But, first I want this evaluation."

About two weeks later, another hearing was conducted before Judge Young, but the competency evaluation was not yet complete. Solton again expressed that he did not want to be represented by Brave and stated he would not take "a competency hearing." Judge Young then permitted Brave to withdraw.

The next day, Solton appeared before Judge Johnson for a scheduling hearing, and he was not represented by any counsel. Judge Johnson scheduled a preliminary hearing—pending Solton's competency evaluation—and asked Solton if he was representing himself; Solton responded that he was. Judge Johnson asked Solton if another judge had previously "discussed" with Solton his right to have an attorney. Solton replied, "Yes, sir." Solton then asked whether he could be appointed standby counsel. Judge Johnson agreed to do so, explained the role of standby counsel, and appointed Jennifer Wyatt. The district court later received the competency report, which concluded that Solton was competent to stand trial. Based on this report, the district court found Solton competent.

On June 12, 2019, Solton represented himself at the preliminary hearing with Wyatt as standby counsel. No record was made at this hearing about Solton waiving his right to counsel. Mora testified as the only witness for the State, and Solton conducted cross-examination. The district court bound Solton over for trial.

On September 3, 2019, Solton appeared in court with Wyatt as standby counsel on a motion to suppress evidence. Mora testified for the State, and Solton conducted cross-examination. The next day, the district court heard arguments on the suppression motion and on Solton's motion to dismiss on double jeopardy grounds. Again, no record was made at these hearings about Solton waiving his right to counsel. The district court denied the motion to suppress and deferred ruling on the motion to dismiss.

At a pretrial conference, on September 18, 2019, Judge Johnson immediately addressed the issue of Solton's self-representation:

"[I]t's been brought to my attention that we need a written waiver of counsel to be addressed. Mr. Solton elected to represent himself in Judge Young's courtroom and then he was transferred here. And so, Mr. Solton, part of that process is a written waiver. And Mr. Solton, do you still intend to represent yourself in both cases?"

Solton and Judge Johnson had a brief exchange discussing another case in which Solton was also representing himself. Solton stated that he did not want to sign any written waiver of counsel. As for the criminal possession of a weapon case, Judge Johnson acknowledged Solton's stated desire to represent himself and conducted a colloquy, warning:

"[Y]ou are charged with criminal possession of a firearm or a weapon by a convicted felon, a level 8 nonperson felony. That has a maximum 23-month prison sentence, a fine of up to a hundred thousand dollars. You have a right to trial on that charge. At your trial any defense that you do not raise would be lost if you represent yourself. You'd be held to the same standard as an attorney. Have any threats or promises been made to you to waive your right to counsel?"

Solton replied, "No, sir." Judge Johnson inquired if Solton understood that if he could not afford an attorney, one would be appointed to him—Solton responded, "Yes,

sir." Solton then confirmed that he could read and write in English. But when Judge Johnson asked him to sign a waiver of his right to counsel, Solton refused. He explained:

> "I done proceeded through a prelim without addressing this, I done proceeded through a suppression hearing without addressing this and I would like that to be reflected on the record, that we have—we have proceeded through substantial proceedings[.] . . . So I would like that to be reflected that I have proceeded through substantial proceedings without a waiver of right of counsel on record and I would not abandon that argument for appeal."

Judge Johnson acknowledged Solton's refusal to sign a written waiver but still found that "as Mr. Solton has done in the past, his intent [is] to represent himself and that he is waiving a right to counsel and proceeding to [represent] himself. He has stand-by counsel but that person is not counsel of record."

The case proceeded to a jury trial on October 3, 2019. The State presented only one witness, Mora, the special agent who had recovered the rifle from the Nissan Pathfinder. During his cross-examination of Mora, Solton admitted photographs of the pistol found inside the house where he was staying, which was not the basis for the charge he was facing. Solton asked Mora several questions about the pistol—the State had introduced no evidence about that weapon. Solton then asked Mora about statements Hurde made that he had "slept with [the rifle from the car] the night before," which Mora confirmed. He continued asking Mora about Hurde telling him that Solton "always had a gun with him" and other statements she had made about his possession of yet another rifle—about which the State had not introduced evidence.

After Solton finished his cross-examination, the State elicited testimony from Mora that Solton had admitted to having "moved the guns, specifically the 22 rifle and the Taurus nine millimeter, that he had personally moved those so that—there was a small child in the home and that he had moved those to a location where the child could

5

not have access to them." Mora also testified that Solton admitted that all three weapons would have his fingerprints and DNA on them. Mora also stated that Hurde told him that Solton had her buy the gun found in the back of the Nissan for him.

As a result of this line of questioning, the district court held a bench conference to address the evidence about the other guns that Solton had not been charged with possessing. The State noted that it would likely be error if the district court did not instruct the jury on alternative means of committing the crime because the jury had heard evidence that Solton possessed three firearms. In response, Solton argued the jury should not be allowed to find him guilty of possessing either of the other guns because he had not been charged with possessing them. The State then moved to amend the complaint to conform to the evidence Solton had introduced during his cross-examination of Mora. Solton objected and argued the State could not amend the complaint during the trial. The district court found good cause to grant the State's motion because Solton had introduced the evidence about the other guns and would not be prejudiced by the amendment.

Solton's defense at trial was that the Draco rifle belonged to his girlfriend, Hurde, and he only handled the two other weapons to keep them away from Hurde's children. Solton requested a jury instruction on "innocent handling" of weapons as a defense to the charge, but the district court did not give the instruction.

After considering the evidence, the jury found Solton guilty of criminal possession of a weapon—the verdict form shows that it unanimously agreed that Solton had been in possession of each of the three firearms listed. The district court sentenced Solton to 21 months' imprisonment, which it ordered him to serve consecutive to his sentences in other cases. Solton timely appealed the district court's judgment.

6

DID SOLTON ADEQUATELY WAIVE HIS RIGHT TO COUNSEL?

Solton claims the district court violated his right to counsel under the Sixth Amendment to the United States Constitution because he did not make a knowing and intelligent waiver of counsel until the pretrial conference—after he had represented himself at critical stages of the trial process. The State asserts that this court should not reach this issue because Solton invited any error in the district court's failure to obtain a valid waiver of counsel. The State also asserts this court should not address Solton's claim for the first time on appeal because "this issue has factual disputes."

*The State's procedural arguments*

As for invited error, the State contends that Solton misled the district court about having already waived his right to counsel before a different district judge. The State then argues that Solton refused to participate when the court attempted to conduct a waiver colloquy and asked him to sign a written waiver during the pretrial conference.

"Under the invited error doctrine, a litigant may not invite error and then complain of that same error on appeal." *State v. Willis*, 312 Kan. 127, 131, 475 P.3d 324 (2020). But the invited error doctrine does not apply when the error complained of is structural. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014.) An error in procuring a valid wavier of the right to counsel defies analysis for harmless error because the acceptance "of an invalid waiver in violation of a defendant's Sixth Amendment rights necessarily leaves him 'entirely without the assistance of counsel' at trial." *United States v. Allen*, 895 F.2d 1577, 1580 (10th Cir. 1990). Our Kansas Supreme Court has similarly held that a violation of a defendant's Sixth Amendment right to counsel is subject to structural error analysis. *State v. Jones*, 290 Kan. 373, 382-83, 228 P.3d 394 (2010).

Nor does the record support the State's assertion that Solton misled the district court about having already waived his right to counsel before a different district judge. At a hearing on April 23, 2019, Judge Johnson asked Solton if another judge had previously "discussed" with Solton his right to have an attorney. Solton replied, "Yes, sir." Solton had in fact discussed his right to counsel with another judge, but the judge did not adequately ensure that Solton waived his right to counsel at that hearing. Solton agreeing with Judge Johnson that he had discussed his right to have an attorney with another judge is not the same thing as misleading the court that he had adequately waived his right to counsel. Courts must indulge every reasonable presumption against waiver of the right to counsel and will not presume acquiescence in the loss of fundamental rights. *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006). We reject the State's assertion that Solton invited any error in the district court's failure to obtain a valid waiver of counsel.

The State also asserts this court should not address Solton's waiver of counsel claim for the first time on appeal because "this issue has factual disputes." The State asks this court to take judicial notice of the record on appeal in another case involving Solton and asserts that, according to the register of actions in that case, Judge Young "may" have advised Solton of his right to counsel. Even if we accepted the State's invitation to take judicial notice of the record on appeal in another case, this would not mean that Solton has not preserved his right to counsel issue in this case.

The record reflects that Solton preserved his right to counsel issue for this appeal. At the pretrial conference on September 18, 2019, when the district court finally made a good record and obtained a valid waiver of counsel from Solton, he explained to the court that he had represented himself at several prior hearings without waiving counsel and that he "would not abandon that argument on appeal." Solton is not raising his right to counsel issue for the first time on appeal and the issue is preserved for review.

8

*The merits of Solton's claim*

The thrust of Solton's claim is that he never waived his right to counsel after being informed of his rights until the pretrial conference on September 18, 2019. By that time, he had represented himself at his preliminary hearing and the hearings on his motion to suppress and motion to dismiss, which were critical stages of the trial process. Solton argues that the violation of his right to counsel was structural error that can be remedied only by reversal of his conviction. The State's only response to the merits of Solton's claim is that "the record in this case makes it clear that Solton knew his rights and willingly [chose] to proceed pro se."

Appellate courts exercise unlimited review over questions involving the interrelated rights to counsel and self-representation. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018). But the determination of whether a waiver of the right to counsel was knowingly and intelligently made depends on the facts and circumstances of each case. *State v. Buckland*, 245 Kan. 132, 137, 777 P.2d 745 (1989). As a result, Kansas courts review a district court's findings on a waiver of counsel for substantial competent evidence. See *State v. Hughes*, 290 Kan. 159, 162, 224 P.3d 1149 (2010). And the State has the burden of showing that an accused was advised of their right to counsel, either retained or appointed, and that their waiver of counsel was knowingly and intelligently made. *State v. Youngblood*, 288 Kan. 659, 662, 206 P.3d 518 (2009).

The Sixth Amendment guarantees criminal defendants the right to the assistance of legal counsel during all critical stages of a criminal proceeding. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). Solton was appointed standby counsel soon after his first appearance, but standby counsel does not qualify as the assistance of counsel as required by the Sixth Amendment. See *Vann*, 280 Kan. at 793. Solton represented himself at the preliminary hearing and pretrial motions to suppress and dismiss. A preliminary hearing is a critical phase of a criminal prosecution. *Jones*, 290 Kan. at 381.

9

Neither the United States nor the Kansas Constitutions explicitly provide for a right of self-representation. Rather, the right has been implied from the right to counsel granted in the Sixth Amendment. *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). To exercise the right to self-representation, a defendant must first make a knowing and intelligent waiver of the right to counsel. 422 U.S. at 835.

> "'A criminal defendant who before trial clearly and unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation. The choice is to be made "'with eyes open.'"" [Citations omitted.]" *Bunyard*, 307 Kan. at 470.

Our Supreme Court has emphasized a three-step framework for district courts to use when determining whether a defendant's waiver is knowing and intelligent. *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020) (citing *Buckland*, 245 Kan. at 138).

> "First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case.
>
> "To assure the defendant appreciates the consequences of waiving representation by counsel, *Buckland* suggests the court explain that the defendant will be held to the same standards as an attorney; that the judge will not assist in or provide advice about presenting a defense; and that it is advisable to have an attorney because many trial techniques, evidence rules, and the presentation of defenses require specialized training and knowledge. [Citations omitted.]" *Burden*, 311 Kan. at 863-64.

The *Burden* court then explained that a district court is not required to use any specific checklist. Rather, a district court should "weigh whether a defendant has knowingly and intelligently waived the right to counsel by examining the circumstances

10

of each case." 311 Kan. at 864. To obtain a knowing and intelligent waiver of a defendant's right to counsel, a district judge's inquiry must show that the defendant ""'comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.' [Citation omitted.]" *Buckland*, 245 Kan. at 138.

There is no question that Solton unequivocally expressed his desire to proceed pro se. The issue Solton raises is that he did not make a knowing and intelligent waiver of his right to counsel before he had represented himself at critical stages of the proceedings. The record on appeal does not reveal any substantive waiver of counsel colloquy until the pretrial conference, where the district court finally walked through the advisories outlined in *Burden* and *Buckland*. At that point, Solton knowingly and intelligently waived his right to counsel, and it did not matter that he still refused to sign a written waiver of counsel. But even if we find that Solton validly waived his right to counsel during the pretrial conference, that waiver occurred after he had represented himself at critical stages of the prosecution, including the preliminary hearing.

The State asks this court to make an after-the-fact determination that Solton effectively waived his right to counsel because there are pieces in the record that suggest he had some understanding of the right to counsel, appreciated the charges and potential punishments, and appreciated the consequences of the waiver. The State points to several pro se motions that Solton drafted as demonstrative evidence that he was aware of the consequences of his decision to represent himself and the pitfalls of proceeding pro se. The State also asserts that Solton knew the punishment he was facing because the district court told him during his first appearance. But these cobbled together pieces are not the equivalent of a proper waiver of counsel colloquy. While Solton insisted on representing himself several times throughout the trial process and claimed to have previously represented himself, the record has no explicit waiver of his right to counsel, let alone a knowing and intelligent waiver, until the pretrial conference.

11

In somewhat similar circumstances in *State v. Miller*, 44 Kan. App. 2d 438, 237 P.3d 1254 (2010), this court found reversible error when a district court failed to properly advise a defendant—who stated he would represent himself after he could not find an attorney—of his right to an attorney before allowing the defendant to proceed pro se at a probation revocation hearing. The *Miller* panel explained:

> "Here . . . the district judge failed to advise Miller of his right to counsel and that an attorney would be appointed to represent him at the hearing if he was indigent. The district judge also failed to make a record as to whether Miller understood the nature of the hearing and the punishment he was facing . . . . The district judge also failed to inform Miller on the record of the dangers and disadvantages of self-representation. Based on the record for our review, we conclude that Miller did not knowingly and intelligently waive his right to counsel . . . ." 44 Kan. App. 2d at 441.

Another illustrative case is *Jones*, 290 Kan. 373. Jones, who was charged with aggravated kidnapping and rape, told the district court he wanted to represent himself at his preliminary hearing. The district court conducted a cursory review of Jones' legal training and denied the motion. Jones later agreed to be represented by counsel at his jury trial, and he was convicted as charged. On appeal, the State did not dispute that the district court violated Jones' right of self-representation at the preliminary hearing. The Court of Appeals found the error to be harmless because Jones was properly represented by counsel at the trial. On review, our Supreme Court found that the preliminary hearing is a critical phase of the criminal prosecution. 290 Kan. at 380. As a result of this finding, the court held the violation of Jones' right of self-representation at the preliminary hearing was structural error requiring the reversal of his convictions and "remand for a new proceeding, commencing with a preliminary hearing." 290 Kan. at 383.

In *Jones*, the district court violated the defendant's right of self-representation at the preliminary hearing. Here, the district court violated Solton's right to counsel at the preliminary hearing and other critical pretrial hearings by allowing him to represent

himself without a knowing and intelligent waiver of counsel. Both rights emanate from the Sixth Amendment. It does not matter that the district court may have been proceeding under the incorrect presumption that Solton had adequately waived his right to counsel at an earlier hearing. As *Jones* teaches, this violation amounts to structural error that is not cured because Solton finally knowingly and intelligently waived his right to counsel right before the jury trial. Solton's conviction of criminal possession of a weapon must be reversed, and the case is remanded for a new proceeding, commencing with a preliminary hearing. On remand, the district court must either appoint counsel to represent Solton or, if he desires to proceed pro se, the court must obtain a knowing and intelligent waiver of counsel before conducting any critical proceedings. As a result of this disposition, we need not address Solton's other claims of error on appeal.

Reversed and remanded with directions.