NOT DESIGNATED FOR PUBLICATION

No. 126,774

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY DAYTON CRAMER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed September 26, 2025. Affirmed in part and dismissed in part.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: Cody Dayton Cramer was convicted by two juries of aggravated assault on a law enforcement officer, fleeing and eluding, and driving while his license was suspended. He now appeals, arguing the district court committed two reversible errors. First, Cramer maintains the district court erred by refusing to allow him to proceed pro se at trial. Second, Cramer claims the district court did not properly allow jail credit for all the days he remained in custody pending disposition of his case. We find that the district court did not err in finding Cramer had not waived his right to counsel sufficiently

to proceed pro se. And because Cramer has now served the entire jail term assessed by the court, his issue related to jail credit is moot. Affirmed in part and dismissed in part.

FACTUAL AND PROCEDURAL HISTORY

After a traffic incident in July 2022, the State arrested Cramer for aggravated assault of a law enforcement officer, fleeing and eluding, and driving with a suspended license. He was detained in Leavenworth County Jail for two days for these charges.

From Cramer's first appearance through his trial date, he engaged with the district court in multiple discussions about whether he should be allowed to represent himself at trial. Cramer would routinely speak over the district court, denied the court had jurisdiction over him, and was generally uncooperative as we will detail below. Ultimately, the district court denied Cramer's requests to proceed pro se and appointed counsel to represent him. The district court also denied several motions to withdraw by Cramer's court-appointed counsel.

Along with his behavioral issues, Cramer was arrested several times while on bond. He spent five days in custody in August and September 2022 for failure to appear. He spent another four days in Leavenworth County Jail in October 2022 for new charges. Cramer again failed to appear and spent 29 days in jail in November and December 2022. While out on bond for this case, Cramer was also arrested and detained for new charges in Wyandotte County for which he was jailed from March 14, 2023, to May 5, 2023. Lastly Cramer spent one day in jail in May 2023, again for failing to appear.

In May 2023, a jury found Cramer guilty of fleeing and eluding and driving while suspended but could not reach a verdict on the charge of aggravated assault of a law enforcement officer. At Cramer's second jury trial, the jury convicted him of aggravated assault of a law enforcement officer.

2

At Cramer's sentencing hearing in July 2023, the district court sentenced him to 18 months in prison for the assault charge, and 6-month jail sentences to be served concurrently for both the fleeing and eluding and driving while suspended charges. It also awarded him 31 days of jail credit.

After sentencing, Cramer filed a motion to amend his journal entry to include 63 days of additional jail credit which the district court later denied. Cramer now appeals.

ANALYSIS

I.    THE DISTRICT COURT DID NOT COMMIT STRUCTURAL ERROR BY DENYING CRAMER'S MOTION TO REPRESENT HIMSELF

We first consider Cramer's argument that the district court's refusal to allow him to represent himself at trial constitutes structural error. Cramer maintains that the district court violated his rights to self-representation provided for by the Sixth Amendment to the United States Constitution and by section 10 of the Kansas Constitution Bill of Rights. He argues the district court improperly denied his request to proceed pro se by finding he lacked technical legal knowledge and that the district court ignored his requests for standby counsel. Cramer claims that because the district court's failure to honor his right to represent himself is structural error, his convictions must be reversed, and we must remand his case for a new trial.

To resolve Cramer's appeal, we will first outline additional facts relevant to his claim. We will then list the appropriate legal framework that governs a defendant's right to proceed pro se. Lastly, we will apply that framework under the appropriate standard of review to Cramer's appeal.

3

A. *Additional Facts Relevant to Cramer's Appeal*

Beginning with his first appearance and continuing for several hearings, Cramer refused to provide the district court a clear answer on whether he intended to retain an attorney. Instead, he questioned the district court's jurisdiction and claimed that he needed to know "the bond and oath" that the district court was operating under.

At an appearance in September 2022, Cramer informed the district court for the first time that he intended to represent himself. The district court then asked Cramer several questions, including his highest level of education, if he understood that he would be held to the same standards as an attorney, whether he had any legal training, and if he understood that the court could not assist him in his defense. Cramer indicated he understood the risks of self-representation and continued to reiterate his desire to proceed pro se. But he also refuted the district court's claims that it could not provide him assistance and suggested that the court could "[p]rovide some assistance" and "guide along the way people that are—themselves." Cramer then informed the district court, "I am myself. I don't need to be represented."

The district court told Cramer that if he intended to represent himself, he needed to review and sign a written waiver of his right to counsel. After Cramer reviewed the waiver, the district court asked if he still wished to waive his right to counsel to which he responded, "Well, I mean, I might ask an attorney, but I don't plan to have an attorney." The district court again told Cramer that if he did not intend to have an attorney, he would need to sign the waiver of counsel form.

At that time, Cramer indicated that he did not understand what charges he was facing. After a back and forth with Cramer, the district court eventually read the complaint aloud. The district court and Cramer proceeded to engage in a circular discussion in which the district court would tell Cramer he needed to get a lawyer or sign

4

the waiver of counsel form and Cramer would respond by either indicating that he did not understand the charges against him or stating that he did not plan to get an attorney.

Cramer eventually agreed to sign the waiver form but wrote on the form that he did not understand the nature of the charges against him. The district court stated, "[I]f you do not understand them, then I'm not going to allow you to waive your right to counsel." The district court also informed Cramer that because he would not be allowed to waive his right to counsel, he was "going to need to get an attorney or apply for court-appointed counsel." After another back and forth exchange between Cramer and the district court on whether the district court should allow him to represent himself, the district court appointed an attorney to represent Cramer at a cost of $100 per month.

A month later in October 2022, Cramer's court-appointed counsel informed the district court that Cramer sought to represent himself and that counsel believed that Cramer was competent. Both Cramer's counsel and the district court agreed that Cramer "doesn't know" the law, and the district court ruled that because it did not believe Cramer to be competent, he could not represent himself.

Cramer's behavior at his court appearances led the district court to order a competency evaluation at the request of both his counsel and the State. Cramer underwent the evaluation and in January 2023, the district court found him competent to stand trial.

At the January 2023 hearing, the district court also considered a motion to withdraw from Cramer's counsel. Counsel indicated he was having difficulties communicating with Cramer about his case and noted that they had "a very difficult relationship." When the district court asked Cramer's view on his counsel's motion to withdraw, Cramer replied, "Yeah. I don't mind. He can stay on as counsel or, you know,

but I don't need anybody to turn for me. That's where we started from that in the beginning."

When the district court sought to clarify what Cramer meant, he stated, "Yeah. I don't need anybody as a—I don't need a—I mean, he can stay on as counsel, but I don't need an attorney." Cramer's counsel indicated that he believed Cramer sought standby counsel but did not believe such an arrangement would help with "the communication with the client." The district court denied the motion to withdraw, finding that Cramer "clearly presents as a very difficult client," but that he would be "difficult for any attorney."

At Cramer's final preliminary hearing in February 2023, the district court again considered a motion to withdraw by Cramer's counsel as well as a motion for self-representation filed by Cramer's counsel on Cramer's behalf. The district court asked Cramer if it was his desire to represent himself to which Cramer responded, "Not represent myself, but, yeah, I'd like to go about this on my own." Cramer's counsel informed the district court that Cramer did not recognize the court's authority to appoint counsel, but that he believed Cramer was asking the court for standby counsel.

The district court acknowledged that Cramer had the right to represent himself if he "knowingly and intelligently" waived his right to counsel. Cramer again offered conflicting answers as to whether he wished to waive his right to counsel, continually stating that his attorney could "stay on" as counsel while also stating that he wanted to represent himself. Cramer stated, "I'm not waiving my right to counsel," but then claimed, "I don't want—I don't need an attorney." Based on this exchange, the district court found that Cramer had not waived his right to counsel and thus denied both the motion to withdraw and the motion for self-representation over Cramer's objection.

6

At Cramer's arraignment in February 2023, he refused to enter a plea to the charges against him which required the district court to enter pleas of not guilty on his behalf. An exchange occurred between the district court and Cramer in which Cramer indicated that he wanted to represent himself, but he again refused to waive his right to counsel, instead engaging in an outburst that prompted his attorney to warn Cramer that the district court could hold him in contempt. Cramer ignored his attorney's warnings and accused the district court of "[t]he undoing of God's law" and colluding with the State and his own counsel to keep the proceedings against him "a secret."

Cramer's counsel also renewed his motion to withdraw noting that his communication levels with Cramer were the "absolute worst" since he began practicing law in the late 1990s. Counsel added that working with Cramer "really strains my bounds of professionalism to engage with this person" and that he was concerned with ethical complaints from Cramer no matter how the case was resolved. Counsel indicated to the district court that the case was not going to end well given Cramer's continued behavior including personal attacks against him. Counsel informed the district court that Cramer was trying to "play both sides of the fence" and that he "keeps waffling and wavering on his motion to represent himself."

Despite counsel's objections to representing Cramer, the district court denied the renewed motion to withdraw. It noted that "the more the defendant talks, the more he proves that he does not understand the system. And more likely it will be that he's not going to successfully defend himself." The district court also found that "there's been no waiver of counsel." The case proceeded to trial.

B. *The Legal Framework Governing Cramer's Claim*

We exercise unlimited review over questions that involve a defendant's rights to counsel and self-representation. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902

7

(2018). But a district court's determination of whether a defendant knowingly and intelligently waived their right to counsel depends on the circumstances of each case. *State v. Buckland*, 245 Kan. 132, 137, 777 P.2d 745 (1989). Thus, we review a district court's findings on a waiver of counsel for substantial competent evidence. *State v. Couch*, 317 Kan. 566, 575, 533 P.3d 630 (2023), *abrogated on other grounds by State v. Garcia-Martinez*, 318 Kan. 681, 546 P.3d 750 (2024). Substantial competent evidence possesses relevance and substance which furnishes a substantial basis in fact from which the issues can reasonably be resolved. *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009). We consider a district court's findings on these factors in light of the whole record. *State v. Kemmerly*, 319 Kan. 91, 98, 552 P.3d 1244 (2024).

The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

Although not explicitly provided for, the United States Supreme Court has held that the Sixth Amendment, by way of the Fourteenth Amendment, guarantees a criminal defendant's right to self-representation. *Faretta v. California*, 422 U.S. 806, 818-21, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Section 10 of the Kansas Constitution Bill of Rights provides that "[i]n all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel."

Although Cramer's brief cites to Kansas caselaw to support the general proposition that a defendant has the right to represent themselves, he does not address the textual differences between the Sixth Amendment and section 10. Thus, we will analyze his

8

argument only under the Sixth Amendment. See *Couch*, 317 Kan. at 576 (when appellant fails to use established rules of constitutional interpretation to analyze textual differences between section 10 and Sixth Amendment, claim will be considered under Sixth Amendment principles).

Because the right to self-representation runs counter to a defendant's right to representation by counsel, courts must make every reasonable presumption against a defendant's waiver of their right to counsel whereas the right to self-representation can be waived by a defendant's failure to assert it. See *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) (general presumption against waiver of fundamental constitutional rights); *Bunyard*, 307 Kan. at 470 (application of presumption against waiver of constitutional right to counsel). A defendant therefore only has the right to conduct their own defense so long as they "knowingly and intelligently" waive their right to counsel. *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

To determine whether a defendant has knowingly and intelligently waived their right to counsel, the Kansas Supreme Court has developed a three-step framework:

> "First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case." *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020).

Under this framework, a district court should at a minimum determine whether the defendant understands the charges they face, the importance of the criminal proceedings against them, the potential range of sentences that a district court could impose, and any other essential facts. *Buckland*, 245 Kan. at 138. A district court should not consider

9

whether a lawyer could better represent the defendant, nor should the court base its decision of whether a defendant has competently waived their right to counsel on the defendant's technical legal knowledge. *State v. Jones*, 290 Kan. 373, 376-77, 228 P.3d 394 (2010); *State v. Lowe*, 18 Kan. App. 2d 72, 75, 847 P.2d 1334 (1993).

When a defendant unequivocally invokes their right to represent themselves before trial the right is considered "unqualified." *State v. Cromwell*, 253 Kan. 495, 505, 856 P.2d 1299 (1993). But this right is not absolute and "'rests on an implied presumption that the court will be able to achieve reasonable cooperation' from the pro se defendant." *Couch*, 317 Kan. at 577 (quoting *United States v. Dougherty*, 473 F.2d 1113, 1126 [D.C. Cir. 1972]). Pro se litigants must be "willing to abide by rules of procedure and courtroom protocol." *McKaskle*, 465 U.S. at 173. For these reasons, a defendant can forfeit the right to represent themselves by "deliberately engag[ing] in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46.

### C. *Application of Legal Framework to the Facts of Cramer's Appeal*

Here, the record reflects that the district court properly weighed the factors outlined in *Burden* to determine that Cramer did not knowingly and intelligently waive his right to counsel. Although Cramer signed a waiver of counsel form, he noted on the form that he did not understand the charges against him. Any consideration by the district court of Cramer's legal or technical knowledge is secondary to the fact that Cramer never properly executed a waiver of counsel form despite the district court giving him many opportunities to do so. Whether Cramer did not comprehend the charges against him or whether he feigned ignorance as part of his defense strategy is unknown and of no concern to this court. Because Cramer appeared to not understand the charges and proceedings, we conclude that the district court properly determined that Cramer did not knowingly and intelligently waive his right to counsel.

But even if Cramer had properly waived his right to counsel, the district court still did not commit structural error by refusing to allow Cramer to proceed pro se. Cramer engaged in obstructionist conduct designed to hamper the proceedings against him. He refused to cooperate with his attorney or the district court, would talk out of turn, and repeatedly made accusations that the district court did not have authority over him. From these facts, we conclude that Cramer was an uncooperative participant who forfeited any right to represent himself at his trial.

For these reasons, we affirm the district court's denial of Cramer's request to represent himself.

## II.     CRAMER'S JAIL CREDIT CLAIM IS MOOT

Cramer next argues the district court erred by denying him jail credit for the entirety of the time he spent incarcerated pending disposition of his case. His claim concerns interpretation of the jail credit statute, K.S.A. 21-6615. We review issues of statutory interpretation de novo. *State v. McLinn*, 307 Kan. 307, 336, 409 P.3d 1 (2018).

The right to jail time credit in Kansas is statutory, governed by K.S.A. 21-6615(a), which states that when a defendant is convicted and sentenced to confinement, that sentence should be computed to "reflect . . . an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

In his appellate brief, Cramer argues the Kansas Supreme Court's decision in *State v. Hopkins*, 317 Kan. 652, 657, 537 P.3d 845 (2023), entitles him to relief. The State disagrees, arguing that while he was in jail in Wyandotte County on other charges, he was out on bond in this case, with no detainer lodged. Because bond is not the same as custody, the State argues Cramer's time in jail on another case cannot be counted toward this one.

11

After we docketed Cramer's appeal, the Kansas Supreme Court issued *State v. Ervin*, 320 Kan. 287, Syl. ¶ 12, 566 P.3d 481 (2025), ruling that offenders are entitled to receive jail credit for all time served regardless of whether they received an allowance for that time against a sentence in another case. We allowed the parties to submit supplemental briefing on the application of *Ervin* to the facts here.

But then, on August 1, 2025, this court was notified by the State that Cramer had served all of his prison term and was on postrelease supervision. The State filed a supplemental brief arguing first that the case was moot since Cramer had served his entire sentence and any decision in this case would not affect the period of Cramer's postrelease supervision. For support, it cited *State v. Phipps*, 320 Kan. 616, Syl. ¶ 3, 623-24, 570 P.3d 1240 (2025) (motions for rehearing pending), which held under similar facts involving completion of the underlying jail term, that once a court determines that an issue is moot, courts lack constitutional authority to review that issue—even if it is an issue of statewide importance. The Supreme Court made it clear that it would no longer consider prudential exceptions. 320 Kan. at 617. The court expressly overruled any prior case that held otherwise. 320 Kan. at 623. In the alternative the State argued that *Ervin* had no application because, as it argued in its opening brief, Cramer was not in custody on this case but had been released on bond.

Cramer did not file a supplemental brief or contest the State's arguments.

We agree that the portion of Cramer's appeal related to jail credit is moot. He has served his entire sentence, and our Supreme Court has made clear that "[a] defendant who is resentenced after serving time in prison is not entitled to credit against a postrelease supervision period for the amount of time served in prison in excess of the prison time imposed at the resentencing." *State v. Gaudina*, 284 Kan. 354, Syl. ¶ 1, 160 P.3d 854 (2007). In other words, even if we were to find that Cramer was entitled to more jail

credit than he was awarded, it would have no impact on the amount or term of his postrelease supervision. Accordingly, his claim is moot and must be dismissed.

Affirmed in part and dismissed in part.